### SEVERIN V. ZACK ET AL.

1. **Evidence**: WILL: TESTAMENTARY CAPACITY. In an action for the probation of a will, where the issue is as to whether testamentary capacity has been impaired or destroyed by sickness, a non-expert who was well acquainted with the testator, both in sickness and health, and who had the care of him in sickness, may be allowed to testify that he saw no difference between his mental condition in sickness and his mental condition in health.

2. ——: ——: CODE, SECTION 3639. Such testimony would not be rendered inadmissible by section 3639 of the Code, although the witness is a party to the suit.

*Appeal from Hardin Circuit Court.*

WEDNESDAY, DECEMBER 8.

THE plaintiff is proponent of the will of Frederick M. Zack, deceased. The defendant contests the probate of the will, upon the ground that the testator at the time of making the will was sick with consumption, and had thereby become imbecile, or nearly so, and was under undue influence exerted by the proponent and his wife. There was a trial by jury, and verdict was rendered for the contestants. Judgment having been rendered accordingly the proponent appeals.

*Porter & Moir* and *F. Gilman*, for appellant.

*Huff & Reed* and *W. V. Allen*, for appellees.

ADAMS, CH. J.—The testator at the time of his death was about fifty years of age, and was residing at Ackley. His family consisted of himself and wife, and an infant child. In June, 1878, he left his home in Ackley, and lived for a few weeks at Cedar Falls with Mrs. Severin, the wife of the proponent, and daughter of the testator by a former marriage. The testator was at that time sick with consumption, and not expected to recover. He

1. EVIDENCE: will: testamentary capacity.

went to Cedar Falls upon the urgent solicitation of Mr. and Mrs. Severin, and with the hope that he might be more comfortable or improved by their care. While at Cedar Falls he executed the will in question. It bears date the 23d day of July, 1878, and by it certain property is devised to Mrs. Severin. After its execution the testator returned to his home in Ackley, where he died with consumption on the 12th day of August, following.

The evidence shows that at the time the will was executed the testator had become greatly reduced in strength, and was able to sign the will only by being raised up in bed for that purpose. The evidence of imbecility, however, is by no means satisfactory. Upon the trial the contestants made some effort to prove insanity. The wife of the testator in her testimony says: "My husband was crazy very often." She then proceeds to detail circumstances, but her testimony in detail shows but little more in regard to the condition of the testator's mind than that he was subject to fits of ill-temper.

The proponent insists that there is no evidence whatever tending to impeach the will, and that the verdict cannot be sustained.

We do not feel called upon to pass upon this question, because in the view which we take of the case it must be remanded for another trial, and the evidence upon another trial may be different.

After Mrs. Zack and others had testified to facts tending, as was claimed, to show the testator's mental incapacity to make the will, the proponent was introduced as a witness, and a question was asked in these words; "Did you notice any actions about him different from what he was in ordinary health?" To this question the contestants objected, upon the ground that it was "incompetent under section 3639 of the Code, and subsequent provisions, for the witness is a party to the suit, relating to transactions between him and the deceased at or about the time of the making of the will in question." The court sustained the objection, and the proponent excepted.

The witness was then asked a question in these words: "From observation alone, can you state any difference in the mental condition of Mr. Zack, at or about the time of making the will, and prior to that time when he was in his ordinary health?" To this question the contestants objected, upon the ground that it calls for the opinion of a non-professional witness regarding a matter of science and skill, without showing the competency of the witness to speak upon that subject, and because the witness is incompetent under the provisions of section 3639 of the Code, he being the husband of the legatee under the will." The court sustained the objection, and the proponent excepted.

We may assume that it was expected by both parties that the witness, if he had been allowed to answer the question, would have stated that be observed no difference between the testator's mental condition at the time he made the will and his mental condition prior thereto when in ordinary health. We have, then, the question whether, in a case where the issue is as to whether testamentary capacity has been impaired or destroyed by sickness, a non-expert who was well acquainted with the testator both in sickness and health, and had the care of him in sickness, can be allowed to state that he saw no difference between his mental condition in sickness, and his mental condition in health. In our opinion a non-expert may be allowed to so state. Such a statement would be a statement of fact, and would not involve any special knowledge or skill. But a non-expert may be allowed to give an opinion, even upon the question of insanity, if the opinion is given in connection with the facts upon which it is based. *Denham's Appeal*, 27 Conn., 193; *Dewitt v. Barley*, 9 N. Y., 388; *Clary v. Clary*, 2 Ired., 78; *Ashcraft v. De Armond*, 44 Iowa, 229.

We come, then, to the second ground of objection, and that is that the witness was incompetent under section 3639 of the

2. ——: ——: Code. Under that section it may be conceded
code section
3639.        that the witness would be incompetent to testify

to any personal transaction, or communication between the witness and the testator. But in testifying that he observed no difference in the testator's mental condition, he would not have testified to a personal transaction, or communication between the witness and the testator. In our opinion the court erred in excluding the offered evidence.

The appellee insists that the case cannot be determined upon its merits for want of an assignment of errors. But we find an assignment.

REVERSED.