## WEBBER v. SULLIVAN ET AL.

1. **Will:** UNDUE INFLUENCE: EVIDENCE. Where the will recited that certain children had received their "equal portion of my estate,"' and evidence was offered to show that such recital was not true, it was held, in the absence of any testimony showing undue influence or false representations by others, the evidence was immaterial; and that evidence of the conduct of the testator to his present wife, before his divorce from his first wife, would have no tendency to prove undue influence in the execution of the will, and was properly rejected.

2. ———: ———: BURDEN OF PROOF. The burden of proof is upon the contestants to establish undue influence in the execution of a will; and the fact that the will is unjust or unreasonable, in the estimation of the jury, is not sufficient evidence such influence was exercised.

3. ———: ———: JUDGMENT OF JURY: INSTRUCTION. An instruction, asked by the contestants, that if in the opinion of the jury a fair and equitable division of the testator's property had not been made, then from that fact they might find undue influence, was radically wrong and was properly refused. The judgment of the jury cannot be substituted for that of the testator.

4. ———: TESTAMENTARY CAPACITY: DEFINITION OF. In order to execute a valid will, the testator should be of sound mind at the time of its execution, that is, he should be capable of comprehending his property interests and of determining what disposition he desired to make of his property.

5. ———: ———: INSTRUCTIONS. The court was not required to define what was sufficient testamentary capacity to support a will, in each paragraph of the instructions, as the charge should all be read together.

*Appeal from Marshall Circuit Court.*

SATURDAY, APRIL 22.

THE plaintiff and proponent filed what purported to be the will of A. C. Bartlett, and asked the same be admitted to probate. In a pleading by them filed, the defendants and contestants admitted the "instrument purporting to be the last will of said A. C. Bartlett, was duly executed by said Bart-

lett," but they objected to its being admitted to probate on the grounds, "That at the time of the execution of said instrument, said decedent was, by reason of old age bodily, and mental infirmities, totally incapacitated from making a valid will," and "That said instrument is not the will of said A. C. Bartlett, for that the same was obtained by the fraud of Roxy Bartlett, the wife of deceased." Trial by jury, verdict for proponent, judgment, and the contestants appeal.

*P. M. Sutton*, *W. A. Foster*, and *J. H. Bradley*, for appellants.

*Brown & Carney*, for appellee.

SEEVERS, CH. J.—The evidence is not before us, but it tended to prove that at the time the will was executed, the testator was sixty-eight years of age. That he had been twice married, and was divorced from his first wife in 1864, by whom he had ten children, and to whom he devised five dollars each. Why he did not give them more is thus stated in the will "for the reason why I do not give each of them more is, I have heretofore assisted each in money and property, and in bringing them up in schooling, etc., their equal proportion in my estate."

The testator married his last wife in 1865, by whom he had two children who were minors at the time the will was executed in 1879. He moved to Iowa in 1865, and the children by his first wife, with a single exception, remained with her in Michigan.

The greater number of said children are poor and the others in moderate circumstances. During the testator's last illness he was visited by one of said children, of whom he affectionately spoke, and said he had made a will giving his wife one-third of his property, and dividing the remainder equally among all his children. That he knew no difference between them. About one year previous the testator execu-

ted a similar will, which he destroyed, except he gave the son he brought to Iowa with him, a horse, which was received by him, and he devised two acres of land to each of his wife's daughters by a previous marriage, in lieu of certain money of theirs he had received. A Mr. Worcester prepared the first will, who told the testator it was essential to the validity of the will he should give all his children something. Upon recovering from a severe illness he demanded said will of Worcester, saying, he desired to make some changes, and upon receiving it he destroyed such will.

The present will was drawn by Mr. Patrick. The testator was sick in bed at the time. He told Patrick he desired to give each of his children by his first marriage, five dollars each, and Patrick made a memorandum of the provisions. He seemed lost and confused and could not give the names of his children, and Mrs. Bartlett was called in to aid him. Patrick went to his office and drafted the will, read it over to the testator, and rewrote it. Patrick asked him if that was his will; the testator answered, "It is just as I want it." While Patrick testified the testator "seemed slightly confused" he was "of sound mind." There was evidence tending both ways as to the mental capacity of the testator. At the time of his death, the testator owned real and personal property of the value of $8,800, but was indebted in the amount of $2,400. He devised one-third to his wife, and divided the remainder equally between his two minor children by her. There was no evidence tending to show that Mrs. Roxy Bartlett, the testator's wife, knew the contents of the will when it was executed, or that she used any influence over the testator in relation thereto, or that, because of her influence, the provisions of the will are in any respect different from what they would otherwise have been.

I. The contestants sought to prove the "condition of the children of the first marriage at the time they lived at home, from their births till the decedent came to Iowa; and what was their clothing, and what decedent

1. WILL: undue influence: evidence.

Webber v. Sullivan.

had given them. Also, that they had had scanty clothing, scarcely any schooling or school privileges, and that they had worked for their father without recompense till they were married and went to establish homes for themselves; that they were dutiful and kind, and obedient to their father." Upon objection being made by the proponent the court refused to permit said evidence to be introduced.

It is said the proposed evidence was admissible for the purpose of showing the recitals in the will are false, and the provisions thereof unjust and unreasonable. The evidence related to a time from fifteen to thirty years prior to the execution of the will, and the only statement therein the evidence tended to show was false was, that said children had received their "equal proportion of my estate." In the absence of any evidence tending to show undue influence on the part of Mrs. Bartlett, or that the testator had reached the conclusion he seems to have adopted by reason of false representations made by Mrs. Bartlett, the proposed evidence was immaterial. If undue influence has been shown, or the recitals in a will have been induced by false representations, or that it is unjust in its provisions, such matters may, in such event, become material. Under such circumstances they become make-weights and aids to the evidence which tends to show undue influence. It is difficult to say, that a false conclusion reached by a testator, based on facts within his own knowledge, or which he believes he knows, is evidence of undue influence. Influence, to be undue, must have induced the testator to make a wrong conclusion. It must have been exercised by some one. If the conclusion reached is the result of erroneous convictions, engendered in the mind of the testator on his own motion, it may possibly be he is of unsound mind, but clearly it cannot be said undue influence has been exercised. Whether a will is just or unjust in its provisions, is not a question for the jury, for a person has a perfect right to make such a will if he does so intelligently.

His determination of such question is final and conclusive. *Carpenter v. Calvert*, 83 Ill., 62.

II. The contestants offered to prove the conduct of testator toward his present wife, at the time, and before the separation from his first wife. Such evidence being objected to, the court refused to permit it to be introduced. It is said this evidence was admissible for the purpose of showing the influence his wife had before marriage, and when such influence was illegally exercised. Conceding all this to be so, the proposed evidence would have no tendency to show an undue influence was exercised at the time the will was executed. The evidence was properly rejected.

III. The contestants asked four instructions which were refused. It is insisted all of them should have been given. The first is as follows:

"If the instrument in dispute is unjust to his representatives, or unreasonable in its provisions, or inconsistent with 2. ——: ——: his intentions previously made or implied from burden of proof family relations, it will be necessary for the executor, and those claiming under the provisions, to give some reasonable explanation of the unnatural character of the will, or of showing that it is not the result of mental defect, loss of memory, or of undue influence; or in other words, to show that notwithstanding the unreasonable, inconsistent and unfair provisions, it was his will, and met with full assent, and that he had a sufficient capacity to make a will."

This instruction casts upon the proponent the burden of proving the negative proposition, that the will was not the result of undue influence, if the jury should conclude it was unreasonable in its provisions. Such is not, in our opinion, the law, but the burden was on the contestants to establish undue influence, and the fact the will is unjust or unreasonable in the estimation of the jury, is not sufficient evidence such influence was exercised. There was no error in refusing the instruction.

IV. The second instruction is as follows: "If the testator was aged, and had an impaired mind and memory, the will

*3. ——: ——: judgment of jury: instruction.*

ought not to be sustained, unless it appears that the disposition of his property was fairly made, and emanated from a free will, without the interposition of others, and to accord with intentions previously expressed or implied from family relations. And if it appears from the evidence that he was about seventy years of age, with an impaired mind and memory, although you believe he had a sufficient mental capacity to make a will, yet if you believe that the disposition made was unfair to his legal representatives; that such disposition did not emanate from a free will, and is not in accord with his previous intentions, either expressed or implied, from his family relations, you will be justified in finding that it is not his voluntary and free will, and that it was obtained by undue influence."

This instruction is not materially different from the first. The legal thought therein contained is, if the will is unfair to the legal representatives, the jury would be justified in finding it was obtained by undue influence. This, in our opinion, is radically wrong. In effect it seeks to substitute the judgment of the jury for that of the testator. For if, in the opinion of the jury, a fair and equitable division of the testator's property was not made, then they may, from that fact, find undue influence, not because the evidence so shows, but because the jury are of the opinion they would have done differently.

V. The fourth instruction asked was properly refused, because there was no evidence tending to show the mind of the testator had been "blunted or dimmed" by the use of drugs so as "to render him easily influenced."

The third instruction asked was substantially given in the fourth paragraph of the charge. It is as follows:

"In order to the making and execution of a valid will, it is necessary that the decedent should be of sound mind at the

*4. ——: testamentary capacity: definition of.*

time of the making of the will; that is, he was capable of comprehending his property interests and determining what disposition he desired to

make of them, and of making such disposition.   And by this it is not meant that he should possess the intellectual vigor of youth, or that usually enjoyed by him while in perfect health.   It is enough if, as above stated, that he was capable of comprehending his property interests of which he was possessed, and of determining what disposition he desired to make of such property, and of making such disposition."

The foregoing we think, enunciates the correct rule, and is sufficiently expressed.   It is urged that under this instruction the jury may have concluded the testator had sufficient testamentary capacity when aided by others, but that the law requires he should have such capacity without prompting from others.   It is by no means certain the latter part of this proposition is correct, but conceding it to be so, we fail to find any such thought as above expressed is contained in the instruction.   On the contrary, the instruction contemplates the testator should have sufficient testamentary capacity. This is all that is required and the jury could not have understood otherwise.

VI.   It is said paragraphs two, three, and five of the charge direct the jury, if the testator was of sound mind 5. ——: ——: (without exlpanation), or the will was not the result of undue influence, it must be admitted to *instruction.* probate.   The charge is to be read altogether.   Therefore, the fact no definition of unsoundness of mind is given in the paragraphs under consideration does not constitute a valid objection.   The court was not required to define what was sufficient testamentary capacity in each paragraph of the instructions.   It is objected the paragraphs under consideration casts the burden on the contestants to show the testator was insane.   As the contestants, in the pleading filed, admitted the will was *duly* executed, but should not have been admitted to probate, because the testator was of unsound mind, the burden, we think, under the issue, was on them to establish the fact pleaded to avoid the will.

VII.   The twelfth instruction given is as follows: "The burden of proof is upon the contestants of the will to show

that it was obtained by undue influence. In order to defeat the probate of the will on this account, it must appear to your satisfaction, by a preponderance of the evidence, that undue influence was employed. And to constitute undue influence it must appear to be such influence or constraint as caused the execution of the will by the decedent against his own preference or desire in the matter. Mere advice or persuasion to induce a testator to make a will, or influence the disposition of his property by will, is not undue influence."

This instruction is vigorously assailed by counsel for the appellants. We incline to think it is correct, but whether it is, or not, is immaterial, because there was no evidence tending to show undue influence, and therefore, no such issue should have been submitted to the jury. *Eckert v. Flowry*, 43 Pa. St., 46. Some of the instructions asked were properly refused for this reason, in addition to those above stated. If the foregoing instruction is not correct the contestants were not prejudiced thereby for the reason above stated.

We have not deemed it essential to refer specifically to the objections made to the other instructions given, all of which are objected to, because the foregoing, we think, sufficiently indicates that, in our opinion, none of them are well taken, and that the judgment must be

AFFIRMED.