Armstrong vs. Armstrong.

ARMSTRONG, Appellant, vs. ARMSTRONG, Respondent.

*April 6 — April 28, 1885.*

*Wills: Undue influence: Burden of proof: Will dictated by husband, the principal legatee.*

1. The formal execution of a will by a person of competent understanding being proved, the burden of showing undue influence is upon the contestant.

2. The evidence in this case — showing, among other things, that the husband of the testatrix asked an attorney to come to his house as his wife wanted him to write her will; that the attorney said that he was busy and that if the husband knew what the will was to be he would write it out at the office before going to the house; that the husband stated what his wife wished the will to be, and the attorney wrote it out and afterwards went to the house and read the will to the testatrix, who was sick in bed, and asked her if that was what she wished; that she replied in the affirmative and thereupon executed the will in due form; that the testatrix and her husband were each over seventy years old, had always lived happily together, and had no children and no descendants except a minor grandson living in another state; that the will gave all her property ($40,000 to $45,000) to her husband, with the desire expressed that he would see that their grandson had a good collegiate education; and that the testatrix, though feeble physically, was of sound mind, — is *held* not to raise any presumption of undue influence on the part of the husband.

APPEAL from the Circuit Court for *Green Lake* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an appeal from the judgment of the circuit court of Green Lake county, reversing the order of the county court of Dodge county, admitting to probate the will of Margaret Armstrong, deceased.

The evidence on the trial shows that Margaret Armstrong executed the will in question on the 30th day of September, 1882, and that at the time of the execution of said will, and at the time of her death, the deceased had no children living, and no issue of any children except the contestant, who was her grandson, — a son of her deceased son, — then about

fifteen years old, living with his mother in Detroit, Michigan. She was again married and living with her second husband. This grandson was also the grandson of the husband of the deceased, to whom by her will she gave her estate. The deceased and the proponent of the will were husband and wife, having lived together as such for thirty or forty years, neither having been married to any other person, and both were over seventy years old at the time the will was executed; and, so far as there is any evidence on the subject, it does not appear that their married life had been otherwise than pleasant and happy. The deceased died from the effects of a cancer with which she had been afflicted for several years. She left an estate valued between forty and forty-five thousand dollars, about half of which was real estate, situate in California. One half of the California estate would have gone to her husband by the laws of that state had she died intestate. The following is a copy of the will of the deceased proposed for probate:

" I, Margaret Armstrong, of the village of Fox Lake, in the county of Dodge, and state of Wisconsin, being of sound mind and memory, and mindful of the uncertainty of human life, do make, publish, and declare this my last will and testament in manner following: (1) I give, devise, and bequeath to my husband, *John Armstrong*, my estate, both real and personal, of every name and nature whatsoever, and I desire my said husband to see that our grandson, *Frederick James Armstrong*, has a good collegiate education, and to furnish means for that purpose. (2) I hereby nominate and appoint Cassius B. Hawes the executor of this my last will and testament.

" In witness whereof, I have hereunto set my hand and seal this 30th day of September, 1882.

her<br>MARGARET X ARMSTRONG.   [Seal.]<br>mark.

" Attest:

" C. B. HAWES.

" C. H. EGGLESTON.

"The above instrument, consisting of one sheet, was signed, published and declared by the said testator to be her last will and testament, in the presence of us, who have signed our names at her request, as witnesses, in her presence and in the presence of each other.

"C. B. HAWES, Fox Lake, Wisconsin.

"C. H. EGGLESTON, Fox Lake, Wisconsin."

The will was admitted to probate by the Dodge county court, without contest, and an appeal was taken to the circuit court of Dodge county. The action was afterwards removed to Green Lake county, and in that court the case was tried by the court without a jury. The only witnesses sworn on the trial of the case in the circuit court were the two subscribing witnesses to the will, and Mr. Banta, who drew the will and was present when the same was executed by the testatrix.

The substance of the testimony is as follows: Mr. Banta testified that in the forenoon of the day on which the will was executed, "the husband of the deceased called on me and wanted me to come down to his house, and stated that his wife wanted me to write her will. I told him I was very busy, and if he knew what it was to be I would write the main portion of it before I went down, at the office. He told me what his wife desired the will to be, and I wrote it in my office. He came again in the afternoon. I had then drawn it up, and I went down with him to the house, and went in with him. He then said he would go and get witnesses. I stayed until the witnesses came. Then *Armstrong* went up stairs where his wife was, and in a short time came down and said his wife was ready, and we all went up together; and, after having a short conversation with Mrs. Armstrong, she being on the bed and propped up with pillows, I read the will over to her, and called her particular attention to the clause in the will regarding the education of her grandson, and asked her if that was what she wanted; and I understood her to say it was just as she

wanted it, or 'that is just as I want it.' After reading the will to her, I asked her if it was just as she wanted her will. When reading the will to her, there was a blank in it for the name of an executor, and I stopped there, and asked her who she would have as executor. She looked towards her husband, and he suggested the name of Mr. Hawes. I asked her if I should put his name in, and she bowed her head in assent, and I put the name in. She took hold of the pen as if to write her name, in the first instance. I thought her hand trembled too much, and I wrote her name first, and then she took hold of the top of the pen and I made her mark. I then asked her if she wished Mr. Hawes and Mr. Eggleston, who were present, to act as witnesses to her last will, and she assented to it either by word or nodding, I could not say which, and they signed the will as witnesses in her presence."

The witness to the will, Eggleston, testified that the will was plainly and distinctly read over by Mr. Banta in the presence and hearing of the testatrix, and, after reading it, "he asked her if that was her will, and if she made it voluntarily; if it was made out as she wished it; and she nodded assent, and said it was, in a feeble tone. Banta then wrote her name, and she made her mark, and I signed it as a witness in her presence." Hawes testified to substantially the same thing. All the witnesses testify that she was of sound mind, but very feeble physically. After the will was executed, Mr. Banta carried it away, and kept it in his possession until after her death. He thinks he took it at the suggestion of her husband.

Upon this proof in the circuit court on the part of the proponent, no evidence being offered on the part of the contestant, the learned circuit judge made the following finding:

" *First.* I find as a fact in this case that Margaret Armstrong, the wife of *John A. Armstrong,* died at the village of Fox Lake, Dodge county, on the 4th day of October,

1882, leaving real estate and personal property owned by her, as stated in the petition for probate in said matter. *Second.* I find that the instrument purporting to be the will of said Margaret Armstrong, attached to the petition of probate herein, was not the will of the said Margaret Armstrong, but was drawn in her absence by one Arie Banta, by the suggestion and dictation of *John Armstrong*, the principal legatee named in said will. *Third.* I find that said instrument was not the will of the said Margaret Armstrong, nor executed or signed by her instruction or direction.

"As a conclusion of law I find that the said instrument was not duly or legally admitted to probate by the said county court of Dodge county; and, *secondly*, that said probate should be vacated and set aside, and probate of said instrument denied. Let judgment be entered accordingly, with costs in favor of the contestant to be taxed in this court, and paid out of the estate of said Margaret Armstrong."

Judgment was entered accordingly, and the proponent appeals to this court.

For the appellant there was a brief signed by *Stroud, Armstrong & Stroud*, and oral argument by *Mr. P. G. Stroud* and *Mr. I. C. Sloan.* To the point that, the formal execution of the will being proved, the burden of showing either mental incapacity or undue influence rests upon the contestant, they cited *Duffield v. Robeson*, 2 Harr. (Del.), 375; *Cordrey v. Cordrey*, 1 Houst. (Del.), 269; *Taylor v. Wilburn*, 20 Mo. 306; *Baldwin v. Parker*, 99 Mass. 79; *Jackman Will Case*, 26 Wis. 104, 111; *Webber v. Sullivan*, 58 Iowa, 260; *Ewen v. Perrine*, 5 Redf. 642; *Cudney v. Cudney*, 68 N. Y. 148.

For the respondent there were briefs by *E. P. Smith* and *Lander & Lander*, attorneys, and *Weeks & Randall*, of counsel, and the cause was argued orally by *Mr. Smith* and

*Mr. H. W. Lander.* They contended, *inter alia*, that the circumstances of this case were such as to make it incumbent on the proponent to show, at least *prima facie*, that the will was made without undue influence. *Delafield v. Parish*, 25 N. Y. 92; *Sears v. Shafer*, 6 N. Y. 272; *Jackman Will Case*, 26 Wis. 132; *Watson v. Rodwell*, 27 Eng. (Moak), 416; *McLaughlin v. McDevitt*, 63 N. Y. 213–219; *Brick v. Brick*, 66 id. 144–9; *In re Baker's Will*, 2 Redf. 179; *Calhoun v. Jones*, id. 34–40; *McKinley v. Lamb*, 56 Barb. 284; *Rollwagen v. Rollwagen*, 63 N. Y. 504; *Potter's Appeal*, 53 Mich. 106; *Purdon v. Earl of Longford*, 11 Ir. Rep. C. L. 267, 276; *Fagan v. Dugan*, 2 Redf. 341; *Eckert v. Flowry*, 43 Pa. St. 46; 1 Jarman on Wills, 46; *Holden v. Meadows*, 31 Wis. 292; Redfield's note to *Kevill v. Kevill*, 6 Am. L. Reg. (N. S.), 83; *Taylor v. Wilburn*, 20 Mo. 306; *Parfitt v. Lawless*, 4 Eng. (Moak), 696; *Henderson v. McGregor*, 30 Wis. 78; *Gilreath v. Gilreath*, 4 Jones Eq. 142; *Dean v. Negley*, 41 Pa. St. 312; *Floyd v. Floyd*, 3 Strobh. Law, 44; *Woodward v. James*, id. 552; *Means v. Means*, 5 id. 167; 1 Story's Eq. Jur. 234–38; Bigelow on Fraud, 266, and note; *Phillips v. Mullings*, L. R. 7 Ch. App. 244; 2 Eng. (Moak), 259.

TAYLOR, J. It will be seen by the findings made by the learned circuit judge that there was no question made as to the competency of Mrs. Armstrong to make a will at the time the one in question was made. That seems to have been conceded by all parties, including the learned judge, nor do we think that he intended to find as an absolute fact that the will propounded for probate was not executed or signed by the deceased or by her direction. The point made by the learned circuit judge against the validity of the will was, in substance, that because it appeared that the will had been drawn up by Mr. Banta before he proceeded to the house of the deceased, and because he had drawn the

same in the form *Mr. Armstrong* had stated to him his wife, Mrs. Armstrong, wanted it drawn, it could not be admitted to probate as her will, although it was plainly read over in her presence and hearing, and after hearing it so read she declared it to be her will and signed the same as such in the presence of the subscribing witnesses, without further evidence being given on the part of the proponent showing that she had previously directed the will to be drawn up in the form it was when read to her. This is evident from the remarks made by the learned judge upon the close of the evidence. Among other things, he says: "It is incumbent on this proponent to show, at least *prima facie*, that it was made without undue influence; that it was voluntary; that she understood it; that she was of disposing mind and memory. *Prima facie* all these things must appear. Now the evidence discloses nothing further than that this legatee procured Mr. Banta to write the will; that he dictated the terms of that will under a statement that it was what his wife wanted; it appears, without any consultation with his wife at all, so far as we know from the evidence; without her knowledge, because there is no proof of what occurred between the husband and wife at all; no proof of what occurred between them when he went up stairs and came down, and said she was ready; no proof that he was directed by the wife to obtain this will made. But it stands, so far as the proof shows, as his own act," etc.

The learned judge, we think, overstates the case against the proponent when he says " he dictated the will." Mr. Banta testisfies that *Mr. Armstrong* stated to him that his wife wanted him to come to the house and draw her will. He did not in the first instance intimate to him the nature of the will she desired drawn. Mr. Banta asked *Armstrong* if he knew what kind of will she wanted drawn, in order to enable him to draw it up at his office, and in reply to this inquiry *Mr. Armstrong* stated what disposition of her prop-

erty his wife desired to make, and he drew the will accordingly at his office before he went over to the house. We do not understand this a dictation of the will by the husband. He simply claimed to have knowledge of his wife's wishes as to the disposition she desired to make of her property. The learned circuit judge says there was no evidence that he obtained this knowledge by consultation with his wife. We think, in the absence of all proof to the contrary, his statement to Mr. Banta that his wife desired him to come up to the house and draw her will must be assumed to be true, and his statement that he knew what disposition she wanted to make of her property by will, especially as she assented to making such disposition of it shortly after, is at least *prima facie* evidence that she desired to make such disposition, and that she had communicated that fact to her husband before she sent him after the scrivener to prepare her will.

We see nothing in the evidence produced on the trial tending to show that any undue influence was used by the husband to induce his wife to make this will, or anything which should require the court to demand of him to prove the absence of undue influence before the will should be admitted to probate. The proponent of a will is not called upon to show affirmatively that there was no undue influence used to procure the making of the will. Undue influence is a defense, and the evidence of it must regularly come from the contestant. *Tyler v. Gardiner*, 35 N. Y. 559; *Boyse v. Rossborough*, 6 H. L. Cas. 2; *Clapp v. Fullerton*, 34 N. Y. 190; *Bleecker v. Lynch*, 1 Bradf. 458, 472. In *Boyse v. Rossborough* the Lord Chancellor says: "One point, however, is beyond dispute, and that is that when once it has been proved that a will has been executed with due solemnities by a person of competent understanding and apparently a free agent, the burden of proving that it was executed under undue influence is on the party who alleges it. Undue influence cannot be presumed."

As this case now stands upon the proofs, there is nothing to bring the case within the rule laid down in *Tyler v. Gardiner*, *supra*, cited by, and much relied upon in the argument by, the learned counsel for the respondents. The syllabus of that case states the facts briefly, upon which it was decided, as follows: " When it appears from the proof that the will was made by a testatrix on her death-bed; that her faculties were enfeebled by long and wasting disease; that she had been for a considerable period under the active and controlling influence of the principal beneficiary; that during this period she had been imbued with causeless antipathy to her only son, and had been induced to expel him from her house and to pursue him with unmerited accusations; that the will originated with the chief beneficiary, who framed the written instructions, engaged the counsel, and superintended the execution; that it involved a complete revolution of intention and an entire departure from previous testamentary dispositions; that it was made under mistaken impressions of fact, recently imbibed, and vitally affecting its provisions,— these facts, coupled with gross inequality and apparent injustice in disposing of her property, raise a presumption of undue influence, and cast the burden of repelling it upon the party to whom it is imputed."

To our minds, the cases have no features in common, except, perhaps, that the will was written before it was presented to the testatrix for execution, by a person employed by the husband, and written in the form suggested by the husband as that desired by the testatrix. It does not appear that she had been under the active and controlling influence of her husband to make the will in the form it was made; nor that she had been imbued either by her husband or any one else with any causeless or other antipathy against her grandson, who was her only heir besides her husband. The will involves no revolution of intention, nor any departure from previous testamentary disposition.

There is no evidence that it was made under any mistaken impressions of fact, recently imbibed, and vitally affecting the provisions of the will. On the contrary, the will is on its face a just and proper disposition of the estate of the testatrix; and, so far as the evidence shows, the only disposition of it she ever intended to make. Her only heir was a grandchild (whose father, her only son, had long since died), a minor living with his mother in another state, and that mother having again married. She evidently supposed she had made ample provision for his education by the will she made, and in leaving the bulk of her estate to her husband, who was also the grandfather of this boy, she placed it where she had every reason to believe (so far as the evidence shows) it would be preserved for the few years which were likely to intervene between her death and the death of her aged husband, trusting to the natural affection of the old grandfather for the only inheritor of his blood, to transmit it to their grandson when he should no longer need it. The will itself has nothing in it apparently unnatural or unjust.

Of a similar will, the Lord Chancellor, in the case of *Boyse v. Rossborough*, says: "That Mr. Colclough might, without any undue influence operating on his mind, desire to make a will giving everything to his wife, is a proposition which cannot be controverted. She had been the partner of his life for twenty-four years. He had no children. His nearest relative was a first cousin of his father, with whom, for whatever cause, he had never had more than slight and casual intercourse. His heir presumptive was a second cousin, of whose existence he does not appear to have been aware, being the daughter of another and elder first cousin of his father, who had died many years previously. That he should, in these circumstances, wish to give everything to his wife, could surely afford no ground for surprise; and one mode, therefore, of looking at this

subject is to consider whether, supposing him, without the exercise of any sinister influence, to have entertained such a wish, his conduct would have been that which, according to the evidence, he in fact pursued." Page 50. Further on he says: "But in order to set aside the will of a person of sound mind, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue influence. It must be shown that they are inconsistent with the contrary hypothesis. Can it be said that there is any such inconsistency here?"

We think the learned circuit judge fell into the error pointed out by the learned Chancellor, and because he saw that there were some circumstances attending the execution of the will of Mrs. Armstrong which are consistent with the hypothesis of undue influence, he held that undue influence was established, without any proof of the fact. This was clearly an erroneous conclusion. That a wife who had apparently lived happily with her husband for the most of their lives, and until they were both over seventy years old, and having no descendants except a minor grandchild, who had never lived with them, and was residing with his mother, again married, in another state, should desire, when about to die, to leave her estate to her husband, is certainly not unnatural or unjust. The fact that she did so in this case does not, therefore, raise any presumption of undue influence, and the mere fact that the husband had obtained a knowledge of such a desire on her part, and when solicited to do so had stated such desire to the person who draughted the will, does not in itself show that she did not execute the same freely, and without coercion on his part. Admitting, as we must, the testamentary capacity of Mrs. Armstrong when she executed the will, we can see no justification for the finding of the learned circuit judge that the writing propounded for probate was not her will.

The will itself is very short, having but few provisions, and if read over to her plainly and distinctly, she could not have failed to understand its provisions; and having executed it, after hearing it so read, it ought to stand as her will, unless it can be shown affirmatively that undue influence was used by the husband to bring about its execution.

As it was stated on the argument in this court that the contestant had evidence which might have been produced on the trial which would have tended to establish the defense of undue influence on the part of the husband, and as it is probable that they were induced to withhold such evidence on account of the declared convictions of the circuit judge, at the close of the proponent's evidence, that the proponent had failed to prove the due execution of the will, we reverse the judgment of the circuit court, and remand the case with directions to the circuit court to grant a new trial in the case, on the application of the contestant, if made within ninety days after the return of the record to said court. If no application for a new trial be made within such time, then the circuit court is directed to enter a judgment affirming the order of the county court admitting the will to probate. The taxable costs of both parties in this court to be paid out of the estate of the testatrix.

*By the Court.*— Ordered accordingly.