SARAH DENNING *et al.*, Contestants, Appellants, v. RICHARD BUTCHER *et al.*, Proponents.

**Testamentary Capacity: Undue Influence not Shown** in a case where an eccentric old man of intemperate habits, and an invalid, left a large legacy to a stranger in blood, who had been his confidential business agent, and in whose family he had resided.

**Shifting Burden of Proof.** The mere fact that a will is unreasonable, and that devisee, a stranger in blood, has been testator's confidential business agent, will not put upon him the burden of showing that the will was not made by his procurement or influence. It must appear that such person has been actually instrumental in the dictation and procurement of the will. The rules of evidence in gifts *inter vivos* are inapplicable.

**Evidence: What Admissible.** On the issue that a bequest is unnatural, it may be shown how devisee cared for testator.

**Same: Opinions.** A witness who has not shown the extent of his acquaintance and dealings with testator, may not state how testator's mental capacity, at a time not fixed nor limited, compared with his mental condition in prior years; nor that testator was of unsound mind at a time not fixed.

**Same.** The opinion of a witness on the sanity of testator should be limited to such times as he has seen him, and should not be allowed to cover several years, in which, for all that appears, he has not seen him often, or a period in which it appears that he did not see him.

**Preliminary Question for Court.** While a witness may, after detailing the facts upon which his opinion as to mental condition is based, give that opinion, it is for the court to first pass upon whether the facts stated entitle the witness to give his opinion. In re Will of Norman, 72 Iowa, 84, and Severin v. Zack, 55 Iowa, 27, distinguished.

Testimony as to Mental Capacity: Personal Transaction With Decedent. An opinion as to sanity, based on what witness saw testator do and heard him say to others, is not open to the objection that it states a "personal transaction" with decedent; nor is it such to state whether decedent recognized witness.

Same: Privileged Communications: Lawyer. Where a testator calls in his attorney to witness his will, it is a waiver which enables the attorney to testify as to decedent's mental condition at the time the will was executed.

Same: Waiver by Executor: Physicians. The decedent's physician may testify as to his mental capacity and condition when a will was made, if called by the executor. Such offer of the witness is a waiver of the statute and binds contestants, though the executor be their adversary.

Practice: Objections. The objection "incompetent" goes to the testimony, and not to the witness.

Practice on Appeal: Motions. A ruling on a motion to dismiss appeal is an adjudication which bars raising the same point, on submission.

*Appeal from Wapello District Court.*—HON. H. C. TRAVERSE, Judge.

FRIDAY, May 25, 1894.

PROCEEDING to set aside the will of Richard Butcher, deceased. From a verdict and judgment sustaining said will, contestants appeal.—*Affirmed.*

*W. W. Cory* and *W. H. C. Jaques* for appellants.

*McNett & Tisdale* for appellees.

KINNE, J.—I. Contestants seek to set aside the will on two grounds: First, want of mental capacity in the testator; and, second, on account of undue influence of Wm. Cowley, his wife, and other members of his family. The testator was about seventy-four years old at the time of his death. He had resided at Eddyville, Iowa, from 1848 up to the time of his death, in March, 1889. He was a bachelor. During most of his active life he had been a merchant, and had, by his energy and ability, accumulated an estate of seventy-five thousand dollars. He was eccentric, reserved,

positive, and honest.   He appears always to have been
somewhat negligent in the care of his person, and
during much of his life greatly addicted to the use of
intoxicating liquors.   About 1877 he had a stroke of
paralysis, which, to a certain extent, ever after affected
his appearance and use of his limbs, but from which,
in other respects, he seemed to have recovered.   After
this affliction, he drank less than he had formerly done.
He executed the will in question on December 29, 1887,
and died March 4, 1889.   From early in 1888 until his
death he was, much of the time, confined to his room,
as a result of disease and old age.   For twenty-five
years prior to his death, he had lived in the family of
William Cowley, and, when ill, was always carefully
cared for by them.   Cowley had also for many years
been his trusted agent, and managed his business, and
possessed, to a remarkable degree, the deceased's con-
fidence.   All the parties to this controversy, except
Cowley, are—or, in the absence of a will, would be—
legal heirs of deceased.   Cowley was in no way related
to the deceased.   The will was written by R. W. Boyd,
Esq., a practicing attorney of Eddyville, who had gen-
erally been deceased's legal adviser and attorney.   It
appears that on the morning of the day the will was
executed, deceased sent Cowley for Boyd; that Boyd
sent Cowley to Butcher for information, and he returned
with a memorandum and then left.   This will was pre-
pared by Boyd in accordance with the memorandum,
except that, at deceased's instance, Boyd added pro-
visions for a monument and that Cowley should act as
executor without bond.   After the will was drawn,
Butcher read it, and requested Cowley to read it, which
he did, whereupon Butcher asked him if he would
accept the trust, and he said he would; and, at Butch-
er's request, Boyd and Epperson witnessed the execu-
tion of the will.   The will gave to deceased's brother,
Thompson Butcher, ten thousand dollars; to Laura

Butcher, daughter of said Thompson Butcher, five thousand dollars; to Richard Butcher, son of John Butcher, deceased's brother, twenty-five hundred dollars; to Ocean Butcher, another son of John Butcher, twenty-five hundred dollars; to John Butcher, another son of deceased's brother, twenty-five hundred dollars; to John Butcher's only daughter by his second wife, twenty-five hundred dollars; to William Cowley, ten thousand dollars, and the remainder of his estate to be divided as follows: To his sister Sarah Neff, one fourth; to his brother, William Butcher, one fourth; to his brother, Thompson Butcher, one fourth; and to the heirs of his brother, John Butcher, one fourth, share and share alike. Cowley was appointed executor without bond. Issue was taken on the want of mental capacity and undue influence. The cause was tried to a jury, who, in answer to special interrogations submitted, found testator competent to make a will, and that no undue influence had been used to procure the will, and found, generally, that the will in question was the valid will of Richard Butcher. The court admitted the will to probate, and taxed the costs of the contest to contestants, from which order and judgment they appeal.

II. Appellee insists that the appeal should be dismissed for reasons set forth in his motion filed at the January term, 1893, and which was then overruled. This question must, therefore, be treated as *res judicata*.

III. It is not seriously contended that the evidence did not justify the verdict. The evidence, as is usual in such cases, was conflicting; but it is, nevertheless, ample to sustain the finding of the jury. Hence we consider only the legal questions raised.

IV. Appellants complain of the action of the court in excluding certain testimony. One question asked the witness Dolts was, "From the facts and cir-

cumstances, as you have narrated them to the jury, what is your opinion as to whether or no he [Butcher] was of sound mind as he had been in prior years?" To this and similar questions the objection was made that no proper foundation had been laid to warrant the admission of the testimony. The objection was properly sustained. The question fixes no time as to when the opinion is called for, and the witness is asked to contrast the deceased's condition at a time not fixed nor limited with his mental condition as it had been in prior years. Again, in another question, no time is fixed as to when the witness was asked to say Butcher was not of sound mind. Furthermore, while it is shown that this witness had been acquainted with deceased for many years, and had done business with him, it does not appear what the extent and character of said transactions were, nor is it shown how frequently they occurred. The opportunity of the witness to judge as to deceased's mental condition appears to have been so slight as to have justified the ruling. It may also be said that the assignments of error which are evidently intended to reach the excluded evidence refer to other pages of the abstract. As, however, this is claimed to have been a typographical error, we have considered them. As to this and other like testimony, which was offered and excluded for the same reason, appellants insist that the rule is that a witness, not an expert, may state his opinion as to the sanity or insanity of another, having first stated to the jury the facts and circumstances upon which said opinion is founded, and that the court has no right to pass upon the question of the sufficiency of the facts to qualify the witness to give such an opinion. It is said to be the settled rule in this state that, after detailing the facts upon which the opinion is based, the court must permit the witness to give his opinion, no matter though the facts be such as to show that no proper foundation

for an opinion has been laid. As supporting this claim, we are referred to *In re Will of Norman*, 72 Iowa, 84, 33 N. W. Rep. 374; *Severin v. Zack*, 55 Iowa, 28, 7 N. W. Rep. 404. In neither of these cases was the question of the right of the court, in such a case, to pass upon the sufficiency of the foundation laid for the admission of such evidence, raised or determined. An examination of the cases decided by this court shows that the doctrine contended for by appellants has never met with approval. The right of a nonexpert witness to give an opinion based upon facts fully disclosed to the jury has always been recognized, but it is equally clear that the court has the right to determine whether such facts have been disclosed as to entitle the witness to express an opinion. That is a preliminary question, and a power which must be possessed by the court, else such a witness, on stating a single fact of such a character that no opinion as to sanity or insanity could properly be based thereon, would be permitted to give his opinion as to the party's mental condition. True, it may be impossible to lay down a rule as to just what statement of facts would show a sufficient foundation to warrant the giving of an opinion by a nonexpert witness. That must depend upon the circumstances of each case, and must be left for the trial court to determine in the exercise of a wise legal discretion; and its ruling in that respect should not be disturbed, unless it clearly appears that it has not properly exercised the discretion with which it is vested. No such case is made here. It is said: "The court can not decide whether the opinion is of much or little weight. Its duty is merely to decide whether such knowledge is shown and such facts are stated as entitled the witness to express any opinion at all." *Colee v. State*, 75 Ind. 511; *Turner v. Cook*, 36 Ind. 129; *Mull v. Carr* (Ind. App.) 32 N. E. Rep. 592; Lawsons, Exp. Ev., p. 476; *Mc-*

*Leod v. State* (Tex. Cr. App.), 20 S. W. Rep. 749; Rog. Exp. Test., pp. 6, 156. As is said in *Brown v. Com.*, 14 Bush, 405: "The court must be satisfied that the witness has had an opportunity, by association and observation, to form an opinion as to the sanity of the person in reference to whom he is to speak; but, as to the extent and character of the evidence, no better rule can be established than to leave it within the discretion of the court." *Hite v. Com.*, 20 S. W. Rep. (Ky.) 217. As supporting our holding, see *State v. Stickley*, 41 Iowa, 236; *Parsons v. Parsons*, 66 Iowa, 759, 21 N. W. Rep. 570, and 24 N. W. Rep. 564; *Ashcraft v. De Armond*, 44 Iowa, 233; *Pelamourges v. Clark*, 9 Iowa, 11; *Blake v. Rourke*, 74 Iowa, 523, 38 N. W. Rep. 392. Witness Kohl was asked touching Butcher's mental condition. The question objected to did not limit the opinion of the witness to the times he had seen the testator, but covered the entire last two or three years of his life. The ruling in this instance was in harmony with the holding of this court in *Blake v. Rourke*, 74 Iowa, 523, 38 N. W. Rep. 392. The witness had testified that he had not conversed with deceased since October, 1887. He said he had frequently seen him before that time, and was permitted, without objection, to give his opinion as to his mental condition prior to October, 1887. He only claimed, since that time, to have observed how Butcher moved around, and that he did not look in his face as he did ten or twelve years before. How often he had seen him since October, 1887, does not appear. We discover no prejudicial error in the ruling. The question asked Burgess was improper, in that it called for an opinion based on facts not stated to the jury.

V. Evidence of several witnesses was admitted as to the way in which William Cowley and wife cared for

the decedent. This was certainly proper. It was appellant's claim that the ten thousand dollar bequest to William Cowley was unnatural, he being a stranger in blood. It was also claimed that the bequest was brought about by undue influence of Cowley, his wife and family. It was, therefore, proper to show that the relations existing between the deceased and Cowley had been of a friendly character. If Cowley and his family had treated deceased with kindness and consideration for many years, it might be an important fact bearing upon decedent's remembrance of them in his will. As to the objections to the evidence of Mrs. Cowley, we have held that an objection as "incompetent" only goes to the testimony, and not to the competency of the witness. *Ball v. R'y Co.*, 74 Iowa, 135; 37 N. W. Rep. 110.

VI. The answer of the witness Parsons was properly stricken out. He stated, in substance, that Butcher had been out of his mind since 1878. He had before testified that he had been away from Eddyville for three years, and also that he had not conversed with Butcher for two years before he died, yet gave his opinion as to Butcher's sanity for years when he never saw him.

VII. William Cowley, his wife, and one Osa Butcher, a legatee under the will, all testified touching the mental condition of deceased. An objection was made to their testimony, under section 3639 of the Code. A careful examination of this record satisfies us that there was no error in these rulings. Mrs. Cowley testified to having seen Butcher for thirty-five years, as to how he ate his meals, what she heard him say to others, what he did, how he acted, how he appeared. And upon this testimony she was asked, after excluding any personal transactions or conversations between herself and Butcher, to state her opinion as to his mental condition. She was not permitted to detail to

the jury anything which, in such a case, can properly be called a transaction or communication personal as between Butcher and herself. It is claimed that the observation of the witness as to the deceased was a personal transaction; that is, if she noticed his demeanor, or his gait, or his expression, or anything else about his appearance, it was a personal transaction. Such a holding would be giving the statute an interpretation wholly unwarranted by its language, and do violence to the meaning of the words used therein. A "personal transaction" means the doing or performing of some business between parties, or the management of any affair. To be a personal transaction, in such a case, the matter testified about must have involved some act by or between two parties, or some act by one party for the benefit or to the detriment of another, and which said other was in some way interested in. It is clear that the witness in this case did not testify to any transaction had with the decedent. Her opinion was based upon what she saw; the conversations she heard between Butcher and others. The following cases tend to sustain this construction of the statute: *Severin v. Zack,* 55 Iowa, 28, 7 N. W. Rep. 404; *Smith v. James,* 72 Iowa, 516, 34 N. W. Rep. 309; *Bates v. Officer,* 70 Iowa, 343, 30 N. W. Rep. 608; *Sankey v. Cook,* 82 Iowa, 125, 47 N. W. Rep. 1077; *McElhenney v. Hendricks,* 82 Iowa, 657, 48 N. W. Rep. 1056; *Gable v. Hainer,* 83 Iowa, 457, 49 N. W. Rep. 1024, and cases cited. As is said in *Dysart v. Furrow,* 90 Iowa, 49, 57 N. W. Rep. 645: "Personal transactions and communications, as contemplated by the statute, are transactions and communications between the parties, of which both must have had personal knowledge. * * * For him to testify that his book, Exhibit A, was his book of original entries, that the charges were made at or near the time of the transactions therein entered, and that he believed them just

and true, would not be stating anything that deceased, if living, could deny from personal knowledge." In *Marietta v. Marietta*, 90 Iowa, 201, 57 N. W. Rep. 709, the claimant was permitted to testify as to the condition of the deceased during the progress of the disease, and the care and attention he required. In the *McElhenney* case it is said: "The statute does not exclude the proof of facts from which, by inference, other facts may be found." There was no error in the ruling. What has been said also applies to the testimony of witness Osa Butcher. He was asked if the decedent seemed to recognize him. This called for no communication or transaction, but for an opinion based upon the observation by the witness of the decedent's acts and condition. The opinion of the witness William Cowley was also based on his observation of deceased, and conversations had by the deceased with other persons, and, for the reason given, was admissible.

VIII. Attorney Boyd, who drew and witnessed the will, and Drs. Vonce and McCrea, who were the physicians of the testator, were permitted to testify as to his mental condition, over appellants' objection that such testimony was incompetent under section 3643 of the Code. This raises an important question, not heretofore passed upon by this court. Section 3643 is as follows: "No practicing attorney, counsellor, physician, surgeon, minister of the gospel, or priest of any denomination, shall be allowed in giving testimony to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same are made waives the rights conferred." As to Boyd, he was requested to, and did, sign the will, as

a witness thereto. This amounted to a waiver on the part of the testator of the provisions of the statute. The statute makes no provision as to how such waiver must be evidenced, or when it must be made. We conclude, then, that any act on the part of the testator which shows that he intended to exempt the witness from the inhibition of the statute will amount to a waiver of its provisions. The fact that the testator requested Boyd to sign the will as a witness presupposes that he knew that this witness might be called upon to testify as to the circumstances touching its execution, as well as his mental condition at the time the will was executed. The policy of the law is to sustain, if possible, testamentary dispositions of property. If, in a case of contest over the testator's mental capacity, the witnesses to the will were not permitted to speak of the facts, conversations, and circumstances touching its execution, and their opinion of the testator's mental condition, cases might arise when the purpose of the law would fail of accomplishment, and the testator's disposition of his property be defeated. The very relationship of such a witness to the will, at the testator's request, implies that the latter expects the witness to testify, in case the occasion requires it, free from the statutory prohibition. As we have indicated, the policy of the law is to uphold wills, and it would be a strange doctrine which would place such a construction upon the statute as would defeat the purposes of the law. We have no doubt, upon both reason and authority, that one who becomes a witness to the will, at the testator's request, is competent to testify to all facts and circumstances attending its execution, and, upon them, to give an opinion that the testator was mentally competent to execute it. *In re Will of Coleman,* 111 N. Y. 220, 19 N. E. Rep. 71; *Doherty v. O'Callaghan,* 31 N. E. Rep. (Mass.), 726; *In re Layman's Will,* 42 N. W. Rep. (Minn.), 286; *Scott v. Harris,* 113 Ill. 454;

*Blackburn v. Crawford,* 3 Wall. 175; *Faster v. Schriber,*
38 Ill. 172; *Russell v. Jackson,* 9 Hare, 387; *Graham
v. O'Fallon,* 4 Mo. 338; *Sheridan v. Houghton,* 16 Hun,
628; *In re Chase's Will,* 41 Hun, 203; 2 Rice on Evi-
dence, pp. 649–651; 1 Taylor on Evidence, sections
927, 928; 2 Greenleaf on Evidence, section 691, and
notes; Beach on Wills, p. 65, section 39; Chaplin on
Wills, pp. 91, 92; Schouler on Wills, section 348;
*Pence v. Waugh* (Ind. Sup.), 34 N. E. Rep. 863.

IX.   Did the court err in admitting the testimony
of deceased's physician as to his physical and mental
condition? May the representatives of deceased
waive the prohibition of the statute in such a
case? There is no question that the settled prac-
tice in this state has been to receive the testimony of
the attending physician, touching the testator's physi-
cal and mental condition at and prior to the time of
the execution of the will; and unless the reasons are
obvious and urgent, and a proper construction of the
statute requires it, no rule should be established which
will set aside a practice long recognized as proper
and necessary. It is contended by appellants that the
prohibition of Code, section 3643, heretofore quoted,
is a privilege which dies with the person, and that the
bar of the statute can not be removed, after the testa-
tor's death, by his representatives or heirs. It may be
conceded, without the citation of authorities, that the
information obtained by the physicians in this case,
and imparted to the jury, was necessary to enable them
to act in the proper discharge of the functions of their
office. It is true that in New York, under the peculiar
wording of their statute, it has been held that such
evidence was inadmissible, and that the executors could
not waive the provisions of the statute. The rule
invoked by appellants is "one of privilege, for the pro-
tection of the patient and he may waive it if he sees fit;
and what he may do in his lifetime those who represent

him after his death may do for the protection of the interests they claim under him." *Frazer v. Jennison,* 42 Mich. 209, 3 N. W. Rep. 882. In *Morris v. Morris,* (Ind. Sup.), 21 N. E. Rep. 919, it is said: "The patient, or his legal representative, may, however, waive the objection to such privileged communications, and permit the physicians to testify thereto." The provisions of the Missouri statutes are, in substance, like ours, touching the waiver of the privilege; and in the recent case of *Thompson v. Ish,* 12 S. W. Rep. 513, wherein the question of waiver was exhaustively treated, the supreme court of that state held that the waiver might be made by heirs or devisees after the death of the testator. See, also, *Groll v. Tower,* 85 Mo. 249; *Association v. Beck,* 77 Ind. 203; 19 Am. & Eng. Encyclopedia of Law, p. 142; *Gurley v. Park* (Ind. Sup.) 35 N. E. Rep. 279. While the authorities are not in entire harmony, we think the better rule is that the prohibition of the statute may be waived either by the testator, or, after his death, by those who stand for him, and in this case by the executor. The executor called these physicians as witnesses, and by so doing he has waived the provisions of the statute prohibiting them from giving evidence acquired in the performance of their duties as physicians to Butcher during his lifetime. In such cases, the statute protecting one during his lifetime from the disclosure of confidential communications hardly requires that construction, in case of his death, which will prevent the accomplishment of the policy of the law in upholding his testamentary disposition of his property, and deprive the court, and parties interested in maintaining the will, of evidence which must often be of the most satisfactory character. We discover no good reason why the privileges of the statute may not be thus waived by those whose interest it is to maintain the integrity of the will, thus effectuating the wishes of its maker.

X. By certain instructions given and refused, and by exceptions thereto, two questions are presented for our determination: *First.* Where a will is contested on the ground of undue influence, and it appears that the testator gave a large legacy to one who had long been his confidential adviser, and who was a stranger in blood, do such facts, alone, cast the burden of proof on such legatee to show that the will was not procured by undue influence on his part? *Second.* Do the facts disclosed in this case raise such a presumption of undue influence on the part of the agent as shifts the burden of proof, and defeats the will, unless rebutted by proof that the will was the deliberate, voluntary act of the testator? It is not necessary to cite authorities in support of the proposition that the presumption of law, in such cases, is that the testator was of sound mind and disposing memory when he executed his will, and that it was his own voluntary act, free from the dictation and procurement of others. True, this presumption may be overcome, but until overcome by proper testimony, it obtains.

Nor will the mere fact that the testator gave a legacy to one not of his blood, and who had been his confidential business agent, cast upon such legatee the burden of showing that the will was not made by his influence or procurement. This would be true, even if such bequest should be held to indicate that the will, in view of all the circumstances, was unreasonable in its provisions, which is not true in this case, when all of the facts are considered. *Webber v. Sullivan*, 58 Iowa, 260, 12 N. W. Rep. 319; *McIntire v. McConn*, 28 Iowa, 480; *Smith v. James*, 72 Iowa, 516, 34 N. W. Rep. 309; *Blake v. Rourke*, 74 Iowa, 520, 38 N. W. Rep. 392. While it is not claimed that, in the above and other cases decided by this court, this precise question has been determined, yet, in them, the question of undue influence, its effect, and the burden

of proof, was considered. Cases are cited by appellants where a different rule applies in respect to the burden of proof than in those relating to the testamentary disposition of property. The length of this opinion precludes our reciting all of the facts relied upon as showing undue influence. Many of them have already been stated, and we may properly say that, giving them all the force and effect to which they are entitled, they fall far short of making even a *prima facie* case of undue influence. Under such circumstances, it is plain that the legal presumption in favor of the will being the free act of the testator was not overcome; and the burden of proof would not, in any event, be shifted, until such facts had been shown as would overcome such presumption. While we concede that it has been held in some cases that the mere fact that a testator gives a legacy to one not related to him, and who occupies a confidential relation toward him, requires the recipient to show that the will was not procured by him, still we think such is not the proper rule. No presumption can be held to arise, because of such facts, alone, that the will does not express the real intent of the testator. Undue influence is a defense to be established by the contestant. *Armstrong v. Armstrong,* 63 Wis. 162, 23 N. W. Rep. 407, and cases cited. *Webber v. Sullivan,* 58 Iowa, 260, 12 N. W. Rep. 319. And it has been held that it is not always a suspicious circumstance against the validity of a will that the writer of it is largely benefited by it. *Stirling v. Stirling,* 21 Atl. Rep. (Md.) 273. See, also, further, on the proposition that undue influence will not be presumed, in the absence of sufficient evidence to warrant such a presumption. *Post v. Mason,* 91 N. Y. 539; *Baldwin v. Parker,* 99 Mass. 79; *Kerrigan v. Leonard* (N. J. Prerog.), 8 Atl. Rep. 503; *Rutherford v. Morris,* 77 Ill. 397; *Carpenter v. Hatch* 15 Atl. Rep. (N. H.) 219. Before the burden of proof

can be said to be shifted to the proponents, in such a case, it must be shown that there is evidence sufficient, and of such a character as, to warrant the presumption that the will was not the free act of the testator; as, in a case like that at bar, that the confidential agent and legatee was actually instrumental in the dictation and procurement of the execution of the will. *Bancroft v. Otis*, 8 South. Rep. (Ala ) 286, and cases cited; *Loder v. Whelpley*. 111 N. Y. 239, 18 N. E. Rep. 874; *In re Will of Mondorf*, 110 N. Y. 450, 18 N. E. Rep. 256.

Applying these rules of law to the facts disclosed in this record, it will be seen that the case is not brought within them. This will was written at Boyd's office. He consulted with Butcher at least twice that day about it. He saw Cowley in the morning, and he it was who requested Cowley to see Butcher, and get information from which the will could be drawn. He did so, and then left. There is nothing to show that the memorandum from which the will was drawn was dictated or controlled by Cowley. Cowley was not present when the will was written. At decedent's request, Cowley was sent for before the will was signed, and asked by testator to read it; and after he had done so, the testator asked him if he would accept the trust. Butcher read the will himself, and Boyd also read it over to him, in the presence of the other witness. It was then signed, and the testator requested one of the witnesses (Epperson) to take it, which he did. The will gave Cowley ten thousand dollars. In all these facts, there is nothing to raise even a fair inference of the exercise of any undue influence on part of the legatee. There was then no case made, requiring the court to instruct the jury, as asked by the contestants, touching the burden of proof changing to the proponents. The instructions given by the court are full, and, if anything, more favorable to the

contestants, regarding, this matter, than the facts warranted. Certainly, they have no just ground for complaint. There are other reasons why the court was justified in refusing the instructions asked, but, in view of what we have said, they need not be considered. We have not discussed the Iowa cases, and some others cited by appellants, because they are not applicable to the case. The rule as to the burden of proof in cases relating to gifts *inter vivos*, where a confidential relation exists between the parties, as to the obtaining of certain presumptions, has often been held inapplicable to cases touching wills. *Bancroft v. Otis*, 8 South. Rep. (Ala.) 286, and cases cited.

XI. We have discussed all of the questions argued which we consider of importance, and discover no prejudicial error in the rulings of the court, or in the instructions. We think it was altogether natural for the testator to remember, in a substantial way, the proponent, William Cowley. He had made it his home with his family for almost a quarter of a century. Cowley had been his trusted man in the management of his business, and the testator's act was in keeping with his intention expressed during his lifetime. He said to witness Williams: "Mrs. Cowley is the best-hearted woman I ever saw, and Cowley is the most honest man I ever saw. He wouldn't take a pin out of the store without giving an account of it, and I don't intend they shall lose by it, either." Having such appreciation of them both, and such confidence, what wonder is it that he provided for them more liberally than for relatives who had never been so situated as to have rendered such valuable service to him? And why should he not liberally reward those who, through his sickness, as well as in health, had been his companions, and attended to his every want? The judgment below is AFFIRMED.