[No. 15291.   Department One.—December 2, 1893.]

## IN THE MATTER OF THE ESTATE OF WILLIAM C. FLINT, DECEASED.

CONTEST OF WILL—INSANITY OF TESTATOR—EVIDENCE—TESTIMONY OF ATTENDING PHYSICIAN.—In a proceeding to contest a will for alleged unsoundness of mind of the testator at the time of its execution, testimony of the attending physician of the testator that he prescribed for him for mental trouble is not admissible in evidence.

ID.—HEIRS CANNOT WAIVE PRIVILEGED COMMUNICATIONS.—An heir of a decedent, who contests the probate of a will with a devisee, is not the representative of the deceased, and cannot waive the privilege attaching to communications from the deceased to his physician.

ID.—OBJECT OF CODE PROVISION.—The object of section 1881 of the Code of Civil Procedure, which provides that communications made by a patient to his physician or surgeon are privileged, is to enable the patient to make a full statement of his physical infirmities to his physician, with the knowledge that the law recognizes the communications as confidential, and guards against the possibility of his feelings being shocked, or his reputation tarnished by their subsequent disclosure.

ID.—EXPERTS.—HYPOTHETICAL QUESTION—OPINION OF ATTENDING PHYSICIAN.—Upon an issue as to the unsoundness of mind of a testator at the time of making his will, testimony of his attending physician, in answer to a hypothetical question as to his opinion, as an expert, of the patient's mental soundness, based upon a state of facts describing the deceased's physical condition, as testified to by the doctor himself, is properly admitted in evidence; and the fact that the condition of the patient, as described in the question, was personally known to the witness, is immaterial.

ID.—UNDUE INFLUENCE—IMPROPER EVIDENCE—ACTION OF WIFE BEFORE MARRIAGE.—In a contest over the probate of a will, upon the ground of undue influence upon the part of the devisee in procuring the execution of the will, the admission of evidence upon the part of the contestant to prove that the devisee, who was the wife of the decedent, at a time prior to her marriage to him, when he was not divorced from his first wife, accompanied the decedent upon a camping excursion, and

was introduced as his wife, is prejudicial error, where it appears that the will was executed nine years after such event, and three years subsequent to his marriage to the devisee, and the isolated event proved does not appear to be connected with the execution of the will by any chain of subsequent events.

ID.—EVIDENCE IN SUPPORT OF WILL—AMOUNT AND CONDITION OF ESTATE. Evidence respecting the amount and condition of the estate is admissible in favor of the supporters of a will, in a contest over its probate, upon issues as to undue influence and mental unsoundness of the testator, for the purpose of showing a fair and reasonable allotment of his property to the parties entitled to his bounty, as indicating mental soundness, and a mind entirely free from all improper influences.

ID.—EFFECT OF BLANK IN WILL—INSTRUCTION—HARMLESS ERROR.— Where a testator left the amount of a bequest blank, and a witness testified that when the will was signed he called the testator's attention to the omission, but the deceased said to let it go, and if he made a codicil he would then put something in the codicil for him, an instruction to the jury that if they found from the evidence that the testator, when he signed the proposed will, omitted bequests which he desired to make, the proposed will was incomplete, and not the decedent's will, is erroneous; but the error will be considered harmless where it appears that no issue was presented to the jury embodying the matter embraced in the instruction.

ID.—NURSE'S MEMORANDUM.—A nurse's record of the events transpiring at the sick-bed of the decedent while she was present may be consulted to refresh her memory as a witness, but cannot be admitted in evidence independently.

ID.—CONTEST OF WILL A CIVIL ACTION.—A contest arising upon the probate of a will is a civil action within the meaning of subdivision 4 of section 1881 of the Code of Civil Procedure.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.

The facts are stated in the opinion of the court.

*Frank M. Stone*, and *F. W. Reade*, for Appellant.

The court erred in allowing the witness Dr. McLean to testify that he prescribed for the testator for mental trouble while he was his attending physician. (Code Civ. Proc., sec. 1881, part 4; *Streeter* v. *City of Breckenridge*, 23 Mo. App. 244; *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56; 52 Am. Rep. 1; *Briggs* v. *Briggs*, 20 Mich. 34; *Renihan* v. *Dennin*, 103 N. Y. 573; 57 Am. Rep. 770; *Loder* v. *Whelpley*, 111 N. Y. 239; *Heuston* v. *Simpson*, 115 Ind. 62; 7 Am. St. Rep. 409; *Freel* v. *Market St. Cable Ry. Co.*, 97 Cal. 40.) The court erred in admitting evidence

offered to show improper relations between the testator
and his widow before their marriage and during the
life of his first wife, as it had no tendency to show un-
due influence exercised at the time the will was executed,
some nine years thereafter. (*Webber* v. *Sullivan*, 58
Iowa, 260; *Batchelder* v. *Batchelder*, 139 Mass. 1; *Pierce*
v. *Pierce*, 38 Mich. 418.) The court erred in refusing
to allow the appellant to show the nature and extent of
the property belonging to the testator. (*Davis* v. *Cal-
vert*, 5 Gill. & J. 269; 25 Am. Dec. 282; *Daniel* v. *Daniel*,
39 Pa. St. 207; *Reichenbach* v. *Ruddach*, 127 Pa. St. 564;
*Delafield* v. *Parish*, 25 N. Y. 23.) The court erred in
instructing the jury, that if the testator omitted a be-
quest he desired to make the instrument was incomplete
and not his will. (*Comstock* v. *Hadlyme etc. Soc.*, 8
Conn. 254; 20 Am. Dec. 100; see, also, *Creely* v. *Ostran-
der*, 3 Bradf. (N. Y.) 113.) The court erred in overrul-
ing the objection of proponent to the admission in
evidence of the nurse's record, kept by her during the
testator's last illness. (1 Wharton's Evidence, secs. 768
et seq.; *Kerns* v. *McKean*, 76 Cal. 89.)

*Welles Whitmore*, for Respondent.

Although the question asked the witness Dr. McLean
was one which involved a privileged communication, yet
the privilege is one that can be waived by the patient's
heirs and representatives, and was so waived. (*Fraser*
v. *Jennison*, 42 Mich. 206; *Groll* v. *Tower*, 85 Mo. 249;
55 Am. Rep. 358; *Thompson* v. *Ish*, 99 Mo. 160; 17 Am.
St. Rep. 552; *Morris* v. *Morris*, 119 Ind. 341.) The
court properly admitted, upon the question of undue
influence, evidence showing the relations between the
testator and his wife before their marriage. (*Main* v.
*Ryder*, 84 Pa. St. 217; *Dean* v. *Negley*, 41 Pa. St. 312; 80
Am. Dec. 620; *Rudy* v. *Ulrich*, 69 Pa. St. 177; 8 Am.
Rep. 238; *Kessinger* v. *Kessinger*, 37 Ind. 341; *Dickie* v.
*Carter*, 42 Ill. 376; Redf. Am. Cases on Wills, 420, 439;
*Small* v. *Small*, 4 Me. 220; 16 Am. Dec. 253; *Reynolds*
v. *Root*, 62 Barb. 250; *Jackman's Will*, 26 Wis. 104.)

It was the province of the jury to weigh the evidence, and considering the evidence and the blank provisions in the will itself and all the facts and circumstances surrounding it, to determine whether the instrument offered for probate was the complete will of the deceased or not. (1 Williams on Executors, p. 74; *Rochelle* v. *Rochelle*, 10 Leigh, 125; *Murry* v. *Murry*, 6 Watts, 353.)

*William F. Gibson*, for the Administrator.

GAROUTTE, J.—A judgment was entered denying probate to a certain instrument claimed to be the last will and testament of William C. Flint, deceased, upon the ground that at the time said instrument was signed the testator was not of sound and disposing mind, and also that said deceased was unduly influenced in the making thereof. The appellant, Annie Flint, wife of the deceased, made a motion for a new trial, which was denied, and this appeal is prosecuted from the order denying such motion.

The appeal is based upon certain rulings of the court in the admission and rejection of evidence offered during the progress of the trial. Complaint is also made of certain instructions of law which were given to the jury. The bill of exceptions is a model in its manner of preparation, containing sufficient evidence to fully yet succinctly point the objections made, and being such as is contemplated by the statute, but forming the exception to the general rule of those placed before us.

Dr. McLean, having stated that he was the attending physician of the deceased for several days prior to his death, was allowed to testify, under the objection of appellant, that during his visitations he prescribed for him for mental trouble.

Subdivision 4 of section 1881 of the Code of Civil Procedure provides:

"A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient

which was necessary to enable him to prescribe or act for the patient."

Under this provision the testimony of the doctor that he prescribed for his patient for mental trouble should not have gone to the jury. It came clearly within the scope of the foregoing provision, and it is evident that the patient was not present at the trial to give his consent to its admission. The authorities are uniform upon this question in all those states possessing statutory enactments in any way similar to the one we have quoted. (See *Briggs* v. *Briggs,* 20 Mich. 34; *Streeter* v. *City of Breckenridge,* 23 Mo. App. 244; *Freel* v. *Market St. Ry. Co.,* 97 Cal. 40.)

Counsel for respondent concedes the force of the above authorities, and also concedes that the evidence was objectionable under the provision of our statute, but insists that the privilege may be waived not only by the patient but by his heirs and legal representatives. The child of the deceased is here the contestant of the will, and by offering the evidence of the physician waived the privilege, provided that under the law of this state the power vested in her to make such waiver. The question of waiver of the privilege by the personal representative or heir of the deceased is a new one in this state, but the statute of New York bearing upon this matter is similar to the provision of our Code of Civil Procedure, and the decisions of the courts of that state furnish us ample light in the form of precedent. The Code of Civil Procedure of New York, section 836, provides that the privilege is present unless "expressly waived by the patient." The California provision contains the words "without the consent of his patient." It will thus be seen that the provisions are in effect the same.

The courts of New York, under this clause of the statute, have uniformly held that the patient alone can waive the privilege, and when such patient is dead the matter is forever closed. (*Westover* v. *Ætna Life Ins. Co.,* 99 N. Y. 56; 52 Am. Rep. 1; *Renihan* v. *Dennin,* 103

N. Y. 573; 57 Am. Rep. 770; *Loder* v. *Whelpley*, 111 N. Y. 239.) The decisions of the appellate courts of Michigan, Missouri, and Indiana support respondent's position in this regard. (*Morris* v. *Morris*, 119 Ind. 341; *Groll* v. *Tower*, 85 Mo. 249; 55 Am. Rep. 358; *Thompson* v. *Ish*, 99 Mo. 160; 17 Am. St. Rep. 552; *Fraser* v. *Jennison*, 42 Mich. 206.) But the statutes of those states regarding privileged communications vary quite materially from those of New York and California, and, as is said in *Thompson* v. *Ish*, 99 Mo. 160, 17 Am. St. Rep. 552: "The difference in the statutes may well cause the difference in the rule laid down in New York and Missouri."

Under the facts of this case we are not called upon to even apply the strict rule laid down by the New York authorities. The contest here arises upon the probate of a will as between the surviving widow, a devisee thereunder, and the heir, a child of the deceased by a former marriage. As yet there is no personal representative in the case, as no executor or administrator has been appointed. The cases cited from various states, with the exception of *Thompson* v. *Ish*, 99 Mo. 160, 17 Am. St. Rep. 552, only go to the extent of the right of the personal representative to waive the privilege. In this case we have no personal representative, and the contest arises between the devisee and the heir. All of the courts concede the privilege does not lapse with death, hence it is coupled with the evidence when offered at the trial. Who has the power to waive it? Can the heir waive it, as against the objection of the devisee? That is the thing done in this case, and we think the action of the court cannot be sustained. It cannot be said that the heir is representing the deceased, for the heir is attempting to overthrow the will, and offers this evidence of the attending physician, over which the privilege rests, for the very purpose of attacking the mental soundness of the patient. Such is not the representative of the deceased referred to in the various decisions of the courts. This provision of law rests upon a sound public policy. Its object and pur-

pose is to enable the patient to make a full statement of his physical infirmities to his physician, with the knowledge that the law recognizes the communications as confidential, and guards against the possibility of his feelings being shocked or his reputation tarnished by their subsequent disclosure. To him, the considerations are even more weighty that the privilege remain inviolate after he has gone to his grave, for his good name is left behind deprived of his protecting care. His rights are not buried in the grave, and heirs and devisees quarreling among themselves over a division of his patrimony, in justice to his memory, should not be allowed to waive the privilege.

The attending physician, Dr. McLean, while upon the witness-stand, was also asked a hypothetical question as to his opinion, as an expert, of the patient's mental soundness, based upon a state of facts describing the deceased's physical condition, as testified to by the doctor himself. The question asked was purely hypothetical, and we think the objection thereto was properly overruled. The fact that the condition of the patient, as described in the question, was personally known to the witness is immaterial. He was questioned as an expert upon matters presented to him in the abstract, and his opinion in either case would necessarily be the same, for the state of facts was the same.

As evidence tending to prove undue influence upon the part of the devisee, Mrs. Flint, in the execution of the will, the contestant, under objection, proved that in the summer of 1882, Mrs. Flint, then Miss Annie Gorsig, accompanied the deceased upon a camping excursion, and at that time was introduced as Mrs. Flint.

The purpose and tendency of this evidence was to establish illicit relations between these parties, and, viewed in that light, it must have prejudiced appellant's cause in the minds of the jury. The will was executed nine years after this event, and, standing alone as an isolated circumstance, disconnected with any chain of subsequent events passing down to the time of its execu-

tion tending to show an exercise of undue influence by appellant upon the testator's mind, we think the evidence objectionable, as entirely too remote to reach the only object for which it could be admissible, to wit, as tending to show undue influence. At that time the testator was not divorced from his first wife; he was not married to his present wife until six years later, and the will was not executed until three years subsequent to this marriage. The only effect the testimony could have had was to besmirch the character of appellant, and her character was not an issue in the case. While a court is allowed a liberal discretion in admitting evidence as to the relations existing between the deceased and the party charged to have exercised the undue influence, yet an isolated circumstance, such as is depicted by this evidence, wholly fails in enlightening the jury upon the question. The testimony of McDonald and Paine, as to appellant being in the company of the testator upon two other occasions, we think immaterial. It is scarcely sufficient even to justify an inference of unlawful relations between the parties. The rule is well settled that a woman living in illicit relations with a testator at the time he executes his will is not allowed to exercise her influence in the execution thereof to the extent that a wife is entitled. But here the evidence offered is isolated circumstances, entirely disconnected, as far as the record discloses, with events surrounding the latter years of the testator's life, and beyond all this, the woman was his lawful wife at the time of the execution of the will, and had been such for three years prior thereto. Conceding indiscretions to have been committed by these parties at this time, such evidence wholly failed to show any undue influence at a time many years after, for in the interim the parties were married, and she had been a lawful wife for years. The foregoing views are fully supported in *Webber* v. *Sullivan,* 58 Iowa, 260; *Batchelder* v. *Batchelder,* 139 Mass. 1; *Pierce* v. *Pierce,* 38 Mich. 418.

Contestant closed his case without offering any evi-

dence as to the value of testator's estate.    Evidence bearing on the question was then offered by the surviving widow, but under objection was ruled out.    The ruling was erroneous.   It is well settled that the amount and condition of the testator's estate is always an element to be taken into consideration in determining the mental capacity of the testator, and the influences which actuated his mind in disposing of his property.   If it is good evidence for the contestants of a will, for the purpose of showing that the devises and bequests to his beneficiaries are unreasonable and unjust as compared to the value of his estate and his relationship to the parties, thus indicating mental incapacity or undue influence, it is equally good evidence in favor of the supporters of the will for the purpose of showing a fair and reasonable allotment of his property to the parties entitled to his bounty, as indicating mental soundness and a mind entirely free from all improper influences.

The tenth paragraph of testator's will reads: " I give, devise, and bequeath to Arthur Joshua ——."   The witness Mason testified that when the will was signed he called the testator's attention to this omission, and the deceased then said to let it go, that if he made a codicil he would then put something in the codicil for him. As bearing upon this matter the court gave the following instruction: "Again, if you find from the evidence in this case that testator, William C. Flint, on said fifth day of January, 1891, when he signed said proposed will, omitted from the provisions thereof bequests which he desired to make, the court instructs you that said proposed will was incomplete, and not the complete will of said testator William C. Flint, and not his will."   The instruction is erroneous; but inasmuch as no issue was presented to the jury embodying the matter embraced within the instruction, the error would seem to be harmless.

Mrs. Lizzie Haggard was the nurse of the deceased at the time he executed his will, and she kept a record of the events transpiring at his sick-bed while she was

present.   Upon cross-examination, contestant, under objection, offered this record in evidence.   Its admission should not have been allowed.   There was no question involved as to the right of the witness to refresh her recollection from the record, but it was offered as an independent piece of evidence in the case.   It is difficult to see the purpose of the offer, for the witness was upon the stand ready to testify as to all competent and material matters occurring at the times she was engaged in the sick-room.

A contest arising upon the probate of a will is a civil action within the meaning of subdivision 4 of section 1881 of the Code of Civil Procedure.   Neither can we give the stipulation entered into by the respective attorneys the scope and force contended for it by respondent's counsel.

The order denying a new trial is reversed, and the cause remanded.

PATERSON, J., and HARRISON, J., concurred.