[S. F. No. 499.   Department One.—March 2, 1897.]

JOSEPH N. HARRISON, ADMINISTRATOR, APPELLANT,
*v.* SUTTER STREET RAILWAY COMPANY ET
AL., RESPONDENTS.

NEGLIGENCE—COLLISION—ACTION FOR DEATH—EXCESSIVE DAMAGES—OR-
DER GRANTING NEW TRIAL — DISCRETION — REVIEW UPON APPEAL.—
In an action by an administrator to recover damages for the death
of the decedent, which resulted from injuries received in a collision
between a street railway car, on which he was a passenger, and a wagon
of a brewing company, occasioned by the alleged negligence of both
parties to the collision, where a verdict was given for eight thousand
dollars damages, an order granting a new trial for excessive damages is
in the discretion of the trial court, and will not be disturbed upon
appeal if there is a reasonable, or fairly debatable, justification for its
action; and where it appears that the decedent, at the time of his death,
was about sixty-nine years of age, but apparently older, and debilitated,
and that his business was that of an expert accountant, and his income
was about one hundred and ten dollars per month, and that his heirs
consisted of a wife and adult daughter dependent upon him, the action
of the court in granting a new trial for excessive damages will not be
disturbed upon appeal.

ID.—NEW TRIAL FOR EXCESSIVE DAMAGES—AFFIDAVITS NOT REQUIRED—
CONSIDERATION OF EVIDENCE.—No affidavits are required on motion for
new trial, where the ground to be considered is that of excessive dam-
ages; but the question whether the verdict is excessive is to be deter-
mined solely from a consideration of the evidence in the case, as to
whether it will fairly sustain the verdict of the jury.

ID.—UNLIQUIDATED DAMAGES — DETERMINATION OF AMOUNT — PREJUDICE
OF JURY — CONFLICT OF EVIDENCE NOT NECESSARY TO JUSTIFY NEW
TRIAL.—The damages sued for in an action for death caused by negli-
gence are in their nature unliquidated, to be estimated from the evi-
dence without specific testimony as to the amount; and though there
may be no conflict of evidence as to the circumstances which the jury
had a right to consider in determining the award of damages, it does
not follow that the jury may not have been influenced by passion or
prejudice in determining the amount.

ID.—DEPENDENCE FOR SUPPORT—MEASURE OF DAMAGES — INSTRUCTION—
PROBABLE NET EARNINGS LESS PERSONAL SUPPORT.—Where the heirs
were members of the family of the decedent, and dependent upon him
for support, it is proper to instruct the jury that they should estimate
and determine the amount that the deceased would, in all reasonable
probability, have earned in the years yet remaining to him, and, de-
ducting from this the amount which he would reasonably require for his
own personal use and maintenance, give a verdict which would pecu-
niarily compensate the heirs.

ID.—ONLY REASONABLE PROBABILITY OF LIFE AND HEALTH TO BE CON-
SIDERED.—The jury are not authorized to consider that the expectancy
of life of the deceased, according to the mortality tables, would be fully

realized, and that he would have constant employment during that expectancy without interruption from sickness; but they are to consider only the reasonable probability of the continuance of the life, health, and vigor of the deceased, in view of the evidence.

ID.—GROSS DISPROPORTION IN VERDICT—PASSION AND PREJUDICE OF JURY —GRANTING OF NEW TRIAL — DIFFERENCE IN RULE — PRESUMPTION AGAINST ABUSE OF DISCRETION.— The rule that it is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice, and strongly indicate prejudice or passion of the jury, that the judge is at liberty to interpose his judgment against that of the jury, is correct only as addressed to the function of the trial court, or when asking the appellate court to set aside the verdict which the court below has refused to disturb; but a different rule prevails when the appellate court is asked to review the action of the trial court, where, in the exercise of its discretion, it has seen fit to set aside the verdict, in which case every intendment is to be indulged in support of its action, which will not be disturbed on appeal if the question of its propriety is open to debate.

ID.—EVIDENCE OF NEGLIGENCE— COLLISION OF WAGON WITH STREET-CAR —MUNICIPAL ORDINANCE — IMPROPER STOPPAGE OF CAR — QUESTION FOR JURY. — Where the collision which caused the death of the decedent occurred at a street crossing, by the sudden stopping of the car in the middle of the crossing, and the collision with it of a brewery wagon coming rapidly down a grade on the side street, and there was evidence tending to show that had the car not stopped when and where it did the collision might have been avoided, the defendant brewing company has a right to offer in evidence, as against its codefendant, the street railway company, a municipal ordinance forbidding the stopping of street-cars upon any street-crossing or crosswalk, so as in any manner to obstruct travel thereon, except where the grade of the street is such as not to admit of stopping at the farther crossing, and the exclusion of such ordinance is material error, and is not rendered harmless by evidence that the stopping of the car was the best thing to do, where that fact is not admitted, and is for the jury to determine.

ID.—TESTIMONY OF PHYSICIAN — AUTOPSY OF BODY OF DECEASED — CONSTRUCTION OF CODE—DEAD MAN NOT A "PATIENT."—The testimony of a physician, of whom the deceased had not been a patient in his lifetime, as to an autopsy of the body of the deceased, attended by him after death, and as to what was disclosed by the autopsy as to the inducing cause of death, is admissible, and is not within the inhibition of section 1881 of the Code of Civil Procedure, providing that "a licensed physician or surgeon cannot, without the consent of the patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient," a dead man not being a "patient" capable of sustaining the relation of confidence toward his physician which is the foundation of the rule given in the statute.

ID.—INCOMPETENT MEDICAL EVIDENCE—PHYSICIAN AND PATIENT—ABSENCE OF "CONSENT OF PATIENT"—LEGAL REPRESENTATIVE CANNOT WAIVE PRIVILEGE.—A medical witness, who attended the deceased as a patient

before his death, cannot give his opinion as to the cause of death, based upon facts ascertained by him during such medical attendance, in the absence of the "consent of his patient," expressly contemplated by section 1881 of the Code of Civil Procedure; nor is it competent for the legal representative of the deceased to waive the privilege, it being only in the power of the patient to waive it, and after his death the matter is forever closed.

ID.—EXPECTATION OF LIFE—MORTALITY TABLES—INSTRUCTION.—The jury should be instructed that, in determining the probable length of life the deceased would have enjoyed, they are entitled to consider the mortality or expectancy tables as evidence bearing on that question, and as tending to show the ordinary experience in like cases.

ID.—LOSS OF COMFORT, SOCIETY, AND PROTECTION—PECUNIARY LOSS—INSTRUCTION.—While the jury have the right to consider the loss suffered by the widow in being deprived of the comfort, society, and protection of her husband, they can regard these things only for the purpose of fixing the pecuniary value of his life; and it is not proper so to instruct the jury on this subject as to lead them to suppose that they could, on this account, add something more than pecuniary loss.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. A. A. SANDERSON, Judge.

The facts are stated in the opinion of the court.

*William H. Jordan,* for Appellant.

The damages given by the jury were not so excessive as to warrant the court in setting aside the verdict. (*Pratt* v. *Pioneer Press Co.,* 32 Minn. 217. See, also, *Aldrich* v. *Palmer,* 24 Cal. 513; *Wheaton* v. *North Beach etc. R. R. Co.,* 36 Cal. 590; *Lee* v. *Southern Pac. R. R. Co.,* 101 Cal. 118; *Howland* v. *Oakland etc. Ry. Co.,* 110 Cal. 513; *Redfield* v. *Oakland etc. Ry. Co.,* 110 Cal. 277; *Morgan* v. *Southern Pac. Co.,* 95 Cal. 510; 29 Am. St. Rep. 143; 1 Sutherland on Damages, 810; *Groll* v. *Tower,* 85 Mo. 249; 55 Am. Rep. 358; *Carrington* v. *St. Louis,* 89 Mo. 216; 58 Am. Rep. 108; *Pennsylvania Mut. Life Ins. Co.* v. *Wilder,* 100 Ind. 92; 50 Am. Rep. 769; *Masonic Mut. etc. Assn.* v. *Beck,* 77 Ind. 203; 40 Am. Rep. 295.) The instruction as to the measure of damages was proper. (*Beeson* v. *Green Mountain etc. Co.,* 57 Cal. 33; *Munro* v. *Pacific etc. Dredging Co.,* 84 Cal. 525; 18 Am. St. Rep. 248; *Morgan* v. *Southern Pac. Co.,* 95 Cal. 517; 29 Am. St. Rep. 143.)

*Napthaly, Freidenrich & Ackerman,* for Respondent Sutter Street Railway Company.

The order granting a new trial on the ground of excessive damages must be affirmed, as it cannot be said that the trial court abused its discretion in making the order. (*Lee* v. *Southern Pac. Co.,* 101 Cal. 121.) The instruction to the jury upon the question of damages, allowing the jurors to take into consideration the relationship between the deceased and the heirs, was erroneous. (*Morgan* v. *Southern Pac. Co.,* 95 Cal. 510; 29 Am. St. Rep. 143; *Pepper* v. *Southern Pac. Co.,* 105 Cal. 402.) The discretion of the trial judge in granting or refusing a new trial must be reasonable and not arbitrary. (*Tefft* v. *Marsh,* 1 W. Va. 38; *People* v. *Superior Court,* 5 Wend. 114; *Rex* v. *Wilks,* 4 Burr. 25; 5 Am. & Eng. Ency. of Law, 681.) The jury could properly consider, in estimating the damages to be given, the relations existing between the deceased and his heirs, for the purpose of determining what loss may have been suffered by reason of the deprivation of the comfort, society, and protection of the deceased. (*Beeson* v. *Green Mountain etc. Co.,* 57 Cal. 33; *Munro* v. *Pacific etc. Dredging Co.,* 84 Cal. 525; 18 Am. St. Rep. 248; *Morgan* v. *Southern Pac. Co., supra; Redfield* v. *Oakland etc. Ry. Co.,* 110 Cal. 277.) The testimony of the attending physicians was properly admitted, as the objection that it was in the nature of a privileged communication would be, and was, waived by the legal representatives of the deceased. (*Scripps* v. *Foster,* 41 Mich. 742; *Grand Rapids etc. Co.* v. *Martin,* 41 Mich. 667.)

*Marcus Rosenthal,* and *Dunne & McPike,* for National Brewing Company, Respondent.

The order granting a new trial was one resting in the discretion of the trial court, and should not be disturbed. (*Davis* v. *Southern Pac. Co.,* 98 Cal. 18; *Clavey* v. *Lord,* 87 Cal. 419; *Nutter* v. *O'Donnell,* 6 Colo. 259; *Smith* v. *Billett,* 15 Cal. 23.) The court erred in excluding the municipal

ordinance, as it was clearly competent in order to show negligence in its violation. (*Siemers* v. *Eisen,* 54 Cal. 418, 420; *Orcutt* v. *Pacific Coast Ry. Co.,* 85 Cal. 296, 297; *Driscoll* v. *Market Street etc. Ry. Co.,* 97 Cal. 565; 33 Am. St. Rep. 203; *Barry* v. *Terkildsen,* 72 Cal. 254, 258; 1 Am. St. Rep. 55; *Spence* v. *Schultz,* 103 Cal. 208, 212; *Knupfle* v. *Knickerbocker Ice Co.,* 84 N. Y. 490; *Massoth* v. *Canal Co.,* 64 N. Y. 524; *Wasmer* v. *Delaware etc. R. R. Co.,* 80 N. Y. 217; 36 Am. Rep. 608; *Connolly* v. *Knickerbocker Ice Co.,* 114 N. Y. 104; 11 Am. St. Rep. 617; *McRickard* v. *Flint,* 114 N. Y. 226; *Jetter* v. *Railroad Co.,* 2 Abb. App. Dec. 458; Shearman and Redfield on Negligence, secs. 13, 485; Deering on Negligence, secs. 6, 243; Thompson on Negligence, 419–21, 1249; Buswell on Personal Injuries, secs. 112, 122, 141.) The court erred in admitting the testimony of the attending physicians, as it was based on information derived from the deceased while a patient, and was, therefore, a privileged communication, which could not be waived by the heirs of the deceased. (*Estate of Flint,* 100 Cal. 392, 396, 397; *In re Mullin,* 110 Cal. 255; *Westover* v. *Ætna Life Ins. Co.,* 99 N. Y. 56; 52 Am. Rep. 1.) The court erred in stating the rule as to the measure of damages. (*Morgan* v. *Southern Pac. Co.,* 95 Cal. 517, 518; 29 Am. St. Rep. 143; *Pepper* v. *Southern Pac. Co.,* 105 Cal. 389.)

VAN FLEET, J.—Plaintiff had verdict and judgment against defendants for eight thousand dollars, as damages suffered by the heirs of his intestate through the death of the latter, resulting from injuries received in a collision between a car of the railroad company, on which he was a passenger, and a wagon of the brewing company, occasioned by the negligence of the defendants.

The court below granted defendants a new trial, on the ground that the verdict was excessive; and the plaintiff appeals from such order, urging that it was wholly unwarranted under the evidence, and was an abuse of discretion on the part of the trial court.

Certain preliminary objections are interposed by defendants, and reasons suggested why the order appealed from cannot be reviewed, but these objections, while possibly possessed of some merit, being purely technical, and the court being of opinion that the order must be affirmed on the merits, it will prove more satisfactory to both parties, and more in accord with the disposition of the court, to so dispose of the appeal.

That the granting of a new trial is a thing resting so largely in the discretion of the trial court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse has become axiomatic, and requires no citation of authority in its support. It is true that such discretion is not a right to the exertion of the mere personal or arbitrary will of the judge, but is a power governed by fixed rules of law, and to be reasonably exercised within those rules, to the accomplishment of justice. But so long as a case made presents an instance showing a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action. More especially is this true where, as here, the question rests largely in fact, and involves the proper deduction to be drawn from the evidence. The opportunities of the trial court, in such instances, for reaching just conclusions are, as a general thing, so superior to our own, that we will not presume to set our judgment against that of the former, where there appears any reasonable room for difference.

Appellant does not seriously question the correctness of these principles, but he contends that the record does not disclose a proper case for their application. He contends that there was no room for the exercise of discretion; that the evidence as to the amount of damages suffered was wholly without conflict; that there was nothing to indicate passion or prejudice, except the amount of the verdict itself, and that there was no

showing, by affidavit or otherwise, of any improper conduct on the part of the jury. As to the last suggestion, it is impertinent to the inquiry. Granting a new trial for the misconduct of the jury, such as may be shown by affidavit, is something wholly different and apart from the right which the statute gives to grant such relief on the ground of excessive damages. The former contemplates some overt act of impropriety, such as receiving evidence out of court, reaching a verdict by chance, and the like; while an excessive verdict implies no misconduct of the jury necessarily, but simply that the result has been induced through excited feelings or prejudice, of which the jury may not, perhaps, have been even aware, but which has, nevertheless, precluded an impartial consideration of the evidence. Whether the verdict is excessive is to be determined solely from a consideration of the evidence in the case, and whether it will fairly sustain the conclusion of the jury—a question which cannot be aided by the showing of extrinsic facts, by affidavit, or otherwise.

As to the suggestion that the evidence touching "the amount of damages" was without conflict, we are not wholly certain that we appreciate exactly what counsel means. There was no evidence given as to the *amount* of the damages suffered. The damages sued for were in their nature unliquidated, and no witness pretended to fix the precise amount plaintiff should recover. We presume counsel means that the evidence as to the circumstances which the jury had a right to regard in determining the award of damages, such as age, condition in life, etc., of deceased, was without conflict. But if this were true, which we do not think can be fairly said, the question as to the proper deduction and conclusion to be drawn from such evidence would still remain for the jury, and whether their consideration of the evidence for this purpose was influenced by passion or prejudice would not necessarily be affected by the fact that the evidence was without conflict. A jury, if

excited by prejudice, might as readily award unjust damages where the evidence was uncontradicted as where it was in sharp conflict.

The evidence tended to show that deceased was about sixty-nine years of age, but his physical appearance would seem to have indicated more advanced years. Dr. Dorr, one of his physicians, testified that he looked older; that he appeared between seventy-five and eighty years of age; while Dr. O'Brien, a physician who examined him on behalf of one of the defendants, after the accident and before his death, testified that he considered him a debilitated man; that in his judgment the result of the injury would not have been serious but for his age and debility. According to the testimony of his widow his health was very good, but he had suffered all his life from sick headache, for which she had been required to nurse him.

His income was about one hundred and ten dollars per month, that is, it did not appear that he was in steady or permanent employment, but the evidence tended to show that he was an expert accountant, who straightened out books and tangled accounts when called upon, and that his earnings averaged that sum monthly.

According to the Carlisle mortality tables, he had an expectancy or probable lease of life of a fraction over nine years and a half. He had dependent on him a wife and an adult unmarried daughter.

Upon these facts the jury were instructed, as to the question of damages, in effect, that they should estimate and determine the amount that the deceased would in all reasonable probability have earned in the years yet remaining to him; and, deducting from this the amount which he would reasonably require for his own personal use and maintenance, give a verdict which would pecuniarily compensate the heirs. It is conceded that this instruction gave the correct rule for the guidance of the jury.

In view of this evidence, and the rule of compensa-

tion by which the jury were to be governed, we think it quite manifest that we should not be justified in holding that there was an abuse of discretion in setting aside the verdict. The jury would seem to have proceeded upon the theory that the deceased's expectancy of life would be fully realized, and that he would continue to the end with the same earning capacity as that possessed by him at the time of his death, for their verdict implies that he would have earned, over and above the amount required for his personal needs, the large net sum of eight thousand dollars, and this would necessarily contemplate constant employment without interruption from sickness or other cause, and with a rate of earnings in no way diminished, since it will readily be perceived that according to his income his utmost gross earnings in the given time would not have exceeded twelve thousand dollars.

Such a result does not accord with ordinary human experience. The deceased's expectancy of life was not a certainty, but a mere probability. It is true he might have lived even longer than the limit of such expectancy, but the chances were much against it. He might also have retained his vigor and ability to labor to the last, but ordinary experience teaches that the weight of advancing years, after the age attained by deceased, bears strongly against such result. Under these circumstances we do not think it should be said that the conclusion of the trial judge was without support in the evidence.

But appellant urges that it is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, that the judge is at liberty to interpose his judgment as against that of the jury; and that such an instance is not shown. The rule invoked is correct, as addressed to the function of the trial court, or when asking this court to set aside the verdict where it has

been refused by the court below. But when we are asked to review the act of that court, where in the exercise of its discretionary power it has seen fit to set aside the verdict on this ground, a very different rule prevails. Every intendment is to be indulged here in support of the action of the court below, and, as elsewhere suggested, it will not be disturbed if the question of its propriety be open to debate.

Among the grounds urged by defendants, in support of their motion, was that of errors of law occurring at the trial. Some of the exceptions under this head we deem material, and, as they were not noticed by the court below, and the cause is to be retried, the parties are entitled to have them considered.

The collision of the two vehicles occurred at a street crossing, in the city of San Francisco. The street-car was stopped suddenly in its progress near the middle of the intersection, and the brewery wagon coming rapidly down a grade on the side street collided with the car. There was evidence having a tendency to show that had the car not stopped where and when it did, the collision might have been avoided. This being the case, the defendant brewing company offered in evidence, as against its codefendant, a municipal ordinance of said city forbidding the stopping of street-cars upon any street crossing or crosswalk so as in any manner to obstruct travel thereon, except where the grade of the street is such as not to admit of stopping at the farther crossing. This evidence was objected to by the railway company and excluded. The ruling was erroneous. Evidence that the party was acting in violation or neglect of a statute or ordinance regulating the mode of conducting vehicles, is always admissible in such a case, as tending to show negligence in the one guilty of the omission. In this instance the evidence bore directly upon the one material question arising as between the defendants, as to which one caused the collision; and its exclusion was, therefore, prejudicial error.

Plaintiff contends that the ruling did no injury, be-

cause it appeared that the stopping of the car was the best thing to do. But whether this was so was for the jury, since the fact was not admitted.

Dr. O'Brien was called by defendants, in rebuttal, upon the question whether the injuries to the deceased were the inducing cause of death. The witness had made a medical examination of deceased after the accident at the instance of the brewing company, and an autopsical examination of the body after death. The court permitted him to give the results of the medical examination, but excluded his testimony as to what was disclosed by the autopsy, upon the theory that the latter was not admissible, under subdivision 4 of section 1881 of the Code of Civil Procedure, which provides: "A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The evidence does not fall within the inhibition of that provision. A dead man is not a " patient," capable of sustaining the relation of confidence toward his physician which is the foundation of the rule given in the statute, but is a mere piece of senseless clay which has passed beyond the reach of human prescription, medical or otherwise. Moreover, the deceased had not in life been the patient of Dr. O'Brien. (*Freel* v. *Market Street Ry. Co.*, 97 Cal. 40.)

The evidence was competent, and being relevant to the issue should have been admitted. The testimony which the witness was permitted to give did not cover all that the defendants were entitled to show by the witness.

Defendants excepted to the admission of the testimony of the attending physicians of deceased, to the effect that in their opinion the injuries caused his death, that opinion being based upon facts ascertained by them during such medical attendance. It is contended by respondents that this evidence was within

the rule of exclusion prescribed by section 1881, above quoted, and was inadmissible.

Under the principles announced in the *Estate of Flint*, 100 Cal. 391, the evidence should have been excluded. While the. precise question here presented—whether, after the death of the patient, his legal representative may waive the objection which the statute gives, in terms, to the patient alone—was not there directly decided, it was, nevertheless, fully considered and discussed, and the meaning of the statute in that regard very clearly indicated in the following language: " The question of waiver of the privilege by the personal representative or heir of the deceased is a new one in this state, but the statute of New York bearing upon this matter is similar to the provision of our Code of Civil Procedure, and the decisions of the courts of that state furnish us ample light in the form of precedent. The Code of Civil Procedure of New York, section 836, provides that the privilege is present unless ' expressly waived by the patient.' The California provision contains the words 'without the consent of his patient.' It will thus be seen that the provisions are in effect the same.

" The courts of New York, under this clause of the statute, have uniformly held that the patient alone can waive the privilege, and when such patient is dead the matter is forever closed. ( *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56; 52 Am. Rep. 1; *Renihan* v. *Dennin*, 103 N. Y. 573; 57 Am. Rep. 770; *Loder* v. *Whelpley*, 111 N. Y. 239.) The decisions of the appellate courts of Michigan, Missouri, and Indiana support respondent's position in this regard. (*Morris* v. *Morris*, 119 Ind. 341; *Groll* v. *Tower*, 85 Mo. 249; 55 Am. Rep. 358; *Thompson* v. *Ish*, 99 Mo. 160; 17 Am. St. Rep. 552; *Fraser* v. *Jennison*, 42 Mich. 206.) But the statutes of those states regarding privileged communications vary quite materially from those of New York and California, and, as is said in *Thompson* v. *Ish, supra:* 'The

difference in the statutes may well cause the difference in the rule laid down in New York and Missouri.' "

This construction is not unreasonable in view of the peculiar terms of our statute, and is undoubtedly fully supported by the New York authorities referred to in the case just cited; and, since our statute seems to be framed closely after that of New York, the construction given the latter by the courts of that state should have great weight with us in interpreting the meaning of our own.

The court charged the jury that the plaintiff was entitled to " recover the reasonable amount which Mr. Harrison would probably have earned in the nine or ten years *which it appears he had yet to live*, according to these tables in evidence, and which are also a guide. You may take them into consideration, as they are part of the proof that he might have lived that long."

It is objected by defendants that this was virtually telling the jury that the Carlisle tables established the fact that deceased would have lived nine or ten years. We hardly think the instruction would be so understood, but yet the language is not as clear as it should have been. The jury should have been instructed that, in determining the probable length of life the deceased would have enjoyed, they were entitled to consider these mortality or expectancy tables as evidence bearing on that question, and as tending to show the ordinary experience in like cases.

The jury were also instructed that in determining the amount of damages plaintiff should recover, they should consider: " (*a*) The pecuniary loss, if any, suffered by the heirs of the deceased through his death; (*b*) *Also*, the relations proved as existing between the deceased and such heirs at the time of his death, and the injury, if any, sustained by them by his death." This instruction was somewhat ambiguous and indefinite, and was calculated to confuse the jury. Such an instruction should be more carefully limited. (*Morgan* v. *Southern*

*Pac. Co.*, 95 Cal. 510; 29 Am. St. Rep. 143; *Pepper* v. *Southern Pac. Co.*, 105 Cal. 401, 402.) While the jury have the right, in such a case, to consider the loss suffered by the widow in being deprived of the comfort, society, and protection of her husband, they can regard these things only for the purpose of fixing the pecuniary value of his life. The form of the instruction here was calculated to lead the jury into the error of supposing that they could, on this account, add something more than pecuniary loss. The instruction, while somewhat similar, is less guarded than the one sustained in *Beeson* v. *Green Mountain Co.*, 57 Cal. 37.

Order granting new trial affirmed.

HARRISON, J., and GAROUTTE, J., concurred.