[Civ. No. 4154. First Appellate District, Division One.—January 30, 1922.]

## AMERICAN MARINE PAINT CO. (a Corporation), Appellant, v. NYNO LINE, INC., Respondent.

[1] BROKER'S COMMISSION—SALE OF VESSEL—NEW TRIAL—INSUFFICIENCY OF EVIDENCE—DISCRETION NOT ABUSED.—In this action to recover a broker's commission for the sale of a vessel, the action of the trial court in granting a new trial upon the single question of fact submitted by it to the jury did not constitute such an unmistakable abuse of that large discretion with which trial courts are invested in passing upon motions for new trial, as to require a reversal of the case.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ira S. Lillick for Appellant.

W. G. Van Pelt for Respondent.

RICHARDS, J.—This appeal is from an order granting the defendant's motion for a new trial. The action was one to recover a broker's commission for the sale of the American steamer "Portland," belonging to the defendant, to certain purchasers for the sum of $325,000, upon which sum the plaintiff claimed that there was due it from the seller a commission of five per cent upon the selling price, amounting to $16,500, by virtue of an agreement between itself and the defendant for the allowance of such commission upon the consummation of such sale. The complaint is in two counts, the first count setting forth in detail the transaction out of which the alleged liability arose; the second count being in the form of the common count for services rendered. The answer of the defendants consists of denials putting in issue practically all of the averments of the complaint. The answer then proceeds as a further and separate defense to set forth in substance but with much detail that in undertaking to act as the agent of the defendant in making the sale of its aforesaid steamer the plaintiff had conducted the transaction through its agent and representative, W. C. Lacombe, and that the latter had falsely and fraudulently represented to the defendant that he would be required in any sale which he would consummate with the would-be purchaser or purchasers of said steamer to pay the purchaser or purchasers thereof a sum equal to three per cent of the purchase price out of his commission, and that for that reason he would have to receive a commission equal to five per cent of the purchase price, otherwise he could not consummate said sale and would not undertake so to do; and that relying upon such representation the defendant agreed to sell said steamer for the price named and to pay said commission, which it would not otherwise have done; wherefore, the defendant prays that the plaintiff take nothing by this action.

The cause has been twice tried before a jury upon each trial and upon practically the same evidence. Upon the first trial the jury returned a verdict in the plaintiff's favor for the full amount of the plaintiff's claim, with interest.

The defendant moved for a new trial upon the statutory grounds. The trial court granted said motion generally. Upon appeal taken from the order so doing it was affirmed by the second division of this court, and in the decision affirming the same the court used these words: "The trial court may have concluded that the evidence was insufficient to justify the verdict, or that the instructions to the jury were misleading and confusing. The former conclusion would not be so unwarranted as to amount to an abuse of discretion under the record in this case, and the latter, also, would be justified, for it appears from the questions of several of the jurors after they had been deliberating for a time and were unable to reach a verdict, that they were confused and had no clear idea of the law applicable to the facts. . . . The granting of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon an unmistakable abuse. (*Groppengiesser* v. *Lake*, 103 Cal. 38 [36 Pac. 1036]; *Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156 [47 Pac. 1019].)" (*American Marine Paint Co.* v. *Nyno Line, Inc.*, 45 Cal. App. 1 [187 Pac. 71].) The cause was accordingly retried before a jury, which again returned a verdict for the full amount demanded in plaintiff's complaint. Again the defendant moved for a new trial upon the statutory grounds and again the trial court granted said motion, this time upon the express ground of the insufficiency of the evidence to sustain the verdict. It is from this second order granting a new trial that the present appeal has been taken.

Concerning the facts of this case there is little dispute, except as to the particular matters to be noted in the course of their recital. The plaintiff and the defendant are each corporations and they were each represented in the transaction for the sale of the steamer in question by certain individuals as their agents, as to whose authority to act as such no question is raised. On or about January 17, 1917, W. C. Lacombe, representing the plaintiff, learned from a Mr. Young, who was representing Mr. Keller, president of the defendant corporation, and also from a Mr. Rees, captain of the vessel, that the steamer "Portland" was for sale and Lacombe was asked by Young to undertake to sell it at a price which was not then definitely fixed. There was some talk about commissions, in the course of which Lacombe

stated that he would want a commission of three per cent himself, although the usual commission was five per cent, as he would be under no expense and would therefore be willing to take three per cent. The affair went no further at that time, but about a month later Lacombe met a Mr. Aaby, who was the son and representative of a Norwegian ship owner. Negotiations began with Aaby assuming to represent these Norwegian interests, which resulted in an offer being made to Lacombe by Aaby for the vessel, the terms of which were transmitted by Lacombe to Keller, president of the defendant corporation. At the time of making such offer to Lacombe, Aaby requested that a commission for himself be considered in the sale price. The terms of Aaby's offer were transmitted to Keller by Lacombe in a telegram reading as follows:

"Portland can arrange sale three hundred twenty-five thousand payable two hundred fifty thousand cash balance two weeks approved security buyers assume present charter paying in addition to above for all fuel and stores which amounts to ten thousand making a total cash to Chase Bank including secured notes two hundred ninety-three thousand dollars commissions five per cent foreign buyers which makes additional commissions necessary to close deal advice accept as is only offer after insurance investigation had Rees in consultation wire Rees authority execute bill of sale on banks approval rush answer."

To this telegram Keller sent Lacombe a reply reading as follows:

"If Dearborn & Co. have collected freight for present voyage amounting to about forty-two thousand dollars will accept two hundred and ninety-three thousand dollars for steamer Portland and fuel stores aboard provided fuel and stores aboard are not over ten thousand if over balance to be paid by purchaser purchaser to assume responsibility for and deliver present cargo at La Palice according to charter free of charge to us terms two hundred fifty thousand dollars cash put in Chase Natl. Bank and forty-three thousand dollars payable in two weeks secured to satisfaction to Chase Natl. out of this will pay you eight thousand dollars commission if this accepted wire quick and will wire instructions to Rees and Chase Natl. if not accepted tell Rees have Portland sail without delay."

A few days later Lacombe wrote a letter to Aaby in the following words:

"On behalf of Mr. W. E. Keller, owner of the steamer 'Portland,' we make you firm offer of $325,000.00, three hundred twenty-five and 00/100, subject to acceptance before 2 p. m. today; terms to be agreed upon."

On the date of the delivery of this letter to Aaby, Lacombe wrote him another letter wherein it was stated that when the final payment was made on the sale of the steamer Aaby was to receive one per cent of the total purchase price as a commission. At this time it does not seem to be disputed that Lacombe believed that Aaby was acting entirely for a foreign buyer. About the same time Lacombe had a further understanding with one Palmer, by which the latter was to receive one per cent commission upon the sale. Palmer was the proprietor of a ship brokerage company in New York City and had an arrangement with Lacombe as to the division of commissions upon the sale of certain ships. Thereafter and on the same day Lacombe sent a telegram to Keller in response to his foregoing message, reading as follows:

"Compelled allow buyers three per cent: Cannot complete deal less five per cent."

After sending this telegram Lacombe had a further talk with Aaby, who deposited a check for $25,000 in a New York bank and handed Lacombe a letter more particularly defining the terms of the sale, upon which Lacombe sent Keller another telegram embodying the terms of Aaby's offer, but making no mention of commissions. By the check and letter of Aaby, Lacombe learned for the first time that the actual buyer of the steamer was the Kerr Steamship Co. of New York City. Lacombe at this time was in New York, while Keller was in Los Angeles, and on the afternoon of February 29th, after the aforesaid telegrams had been sent and check received, Lacombe called up Keller at Los Angeles over the telephone and a conversation resulted as to the terms of which the respective parties to the conversation and their witnesses who heard portions thereof at their respective ends of the line are in sharp disagreement. Respecting the matter of commission Mr. Lacombe states: "I also asked Mr. Keller had he received my two telegrams. Mr. Keller replied that he had and said didn't I think the commission

was rather stiff, and I told him no; I had to have the amount stated in my telegram and I had other parties to take care of. Mr. Keller's remark to me, over the phone was, 'Well, then, go ahead and close it up.' " In this statement Lacombe is, in a measure, supported by Mr. Palmer, who was present with Lacombe at the time and who in his deposition stated: "Later, after listening to the telephone he [Lacombe] said he could not accept any less commission because he had to look after parties here." On the other hand, Keller testified to his version of the conversation as follows: "He said he would have to allow the buyers three per cent or the trade would not go through; claimed he would have to have five per cent to put the trade through or it would not go. I objected to paying five per cent and told him I thought it was entirely too high. He said the trade would not go through unless he could allow the purchaser of the boat three per cent. I told him I was anxious to sell the boat, and if it was absolutely necessary to make the trade and he had to allow the buyers three per cent, to go ahead." In this statement Mr. Keller is in a measure supported by Mr. Aaby, who was at the New York end of the line and who says, referring to Lacombe: "He talked about commission to foreign buyers." In this telephone conversation Lacombe, it is agreed, asked Keller to confirm the same by wire and accordingly on the following day Keller sent a telegram, which, in so far as it related to the commission, stated: "We to pay you five per cent commission on three hundred and twenty-five thousand dollars when remaining three hundred thousand is paid." While the witness Keller was upon the witness-stand, and after he had testified to his version of the foregoing conversation, he was asked by defendant's counsel these questions: "Q. Mr. Keller, what reliance, if any did you place upon the report made to you by Mr. Lacombe that he had to pay the buyers three per cent? A. Why, I relied on it absolutely. Q. Would you have agreed, Mr. Keller, to pay Mr. Lacombe five per cent commission if he had not made the representation that you have testified to regarding paying the buyers three per cent? A. I would not have." Upon cross-examination of the witness Keller, counsel for the plaintiff made an earnest effort to show that the said witness had no reason to place any special reliance upon the

statements of Lacombe. In reading the record touching this branch of the case we gain the distinct impression that the trial court dealt entirely too curtly, not to say discourteously, with this effort, made apparently in the utmost good faith by plaintiff's counsel, by checking and unduly limiting an inquiry into the reasonableness of the witness' statement regarding a vital element in the case and placing said counsel in an attitude of embarrassment, if not of discredit, before the jury. We are urged upon this appeal to take into account this conduct on the part of the trial court for the purpose of estimating what the effect would have been in the way of strengthening the plaintiff's case before the jury and also before the court on motion for a new trial had counsel for plaintiff been unhampered in the foregoing inquiry. This we cannot do; but since it is our conclusion that this case must be retried, we have deemed it proper to indicate that upon retrial of the cause a greater latitude be allowed the plaintiff in its cross-examination of the witness Keller as to the matter above indicated than was permitted upon the former trial.

With respect to the action of the trial court in granting the motion for a new trial in the light of the evidence before it we have reached the conclusion that the order to that effect must be affirmed. In so determining, however, we feel that in view of the fact that this cause has already been twice tried before juries which in each case rendered their verdict in the plaintiff's favor for the full amount of his claim, which verdict was in each case set aside by the court, something should be said which may serve to break the alternating current of this litigation. This will require a reference to certain facts in the case. It is a fact of which no denial can be made, that Lacombe in his telegrams to Keller did state that he would be required to pay a certain per cent of his commission to the buyers and that this statement in these telegrams was untrue except in so far as Aaby, who represented a supposed foreign buyer, was concerned and who was to receive one per cent of said commission. It is also a fact, which is undenied, that Lacombe was by his several agreements to so divide the commission that Aaby would receive one per cent, Palmer one per cent, himself one per cent, and his principal, the plaintiff herein, two per cent of said commission.

As to the precise terms of the telephone communication between Lacombe and Keller the evidence is conflicting. The trial court, however, undertook to instruct the jury as to these matters of fact, charging them in substance that they were bound to assume that Lacombe in his reference to "other parties" in the telephone communication referred to the buyers and must have been understood by Keller so to do. In so doing the trial court trod dangerously near transgressing the constitutional inhibition against charging juries with respect to matters of fact; and having done so the trial court proceeded to charge the jury that the only question they would have to consider was the question as to whether Keller relied upon these representations and believing them to be true entered into a contract for the sale of the vessel; and that in the event the jury so found, its verdict must be for the defendant. We question the sufficiency of this instruction in the absence from it of the element as to whether Keller would or would not have proceeded with the negotiation upon the terms specified as to the commissions had he known the truth to be that Lacombe was to divide his commission with others to the extent stated but not with the buyers. But, however this may be, these instructions left the jury but one debatable ground and that was as to whether they believed Keller's testimony that he relied upon the statement of Lacombe as to "foreign buyers" and that but for that reliance would not have agreed to pay the commission of five per cent which Lacombe insisted upon. It is evident that this is a debatable question of fact which it was clearly within the province of the jury to determine. The jury did determine it adversely to the defendant's contention. With that determination the trial court has disagreed in its order granting a new trial herein. It had under well-settled principles of procedure the discretion so to do. (*Pollitz* v. *Wickersham,* 150 Cal. 238 [88 Pac. 911]; *Churchill* v. *Flournoy,* 127 Cal. 355 [59 Pac. 791]; *Condee* v. *Gyger,* 126 Cal. 546 [59 Pac. 26].) **[1]** Whatever our views may be as to the correctness or conclusions of the trial court as to the single question of fact submitted by it to the jury, we are unable to bring ourselves to the point of holding that its action in granting a new trial upon that ground constituted such an unmistakable abuse of that large discretion with which trial courts are invested in passing upon

motions for new trial, as to require a reversal of the case. (*Groppengiesser* v. *Lake,* 103 Cal. 38 [36 Pac. 1036] ; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156 [47 Pac. 1019].) The fact that the cause will be retried gives opportunity for the correction of whatever errors the trial court may have committed in the former trial and upon said motion.

The order is affirmed.

Kerrigan, J., and Tyler, P. J., concurred.